126 N.J. Super. 379 (1974)
314 A.2d 615
PHOENIX ASSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF,
v.
PETER, DAVIS, MAXINE DAVIS, JEROME SCHER, THOMAS A. CAMPION AND GENEVIEVE A. CAMPION, PARTNERS, t/a THOMAS A. CAMPION & CO., COMMUNITY TRUST SAVINGS & LOAN ASSOCIATION, A NATIONAL SAVINGS AND LOAN ASSOCIATION, FIRST NATIONAL STATE BANK OF NEW JERSEY, A NATIONAL BANKING CORPORATION, AND FIDELITY UNION TRUST COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 8, 1974.
*382 Mr. Edward R. Schwartz for plaintiff (Messrs. Schwartz & Andolino, attorneys).
Mr. William C. Dodd for defendant Fidelity Union Trust Company (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Philip F. McNally for defendant First National State Bank of New Jersey (Messrs. Raff, Scheider & Rudd, attorneys).
*383 DWYER, J.S.C.
Phoenix Assurance Company (plaintiff) brings this action against First National State Bank (National), Fidelity Union Trust Company (Fidelity) and certain others who were payees on its drafts numbered 055438 for $2,800 (first draft), and 113737 for $700 (second draft). The present parties to the action are plaintiff and the two banks. A default judgment has been entered against the payee who received the proceeds and all other payees were dismissed by consent at pretrial.
The facts, which have been stipulated, show that the payee entitled to the proceeds never endorsed the drafts. The case involves a missing, and not a forged, endorsement and a claim by the drawees against the collecting banks, drawees having issued new drafts to the payee whose endorsement was missing. No New Jersey decision has been found on the question for decision. Cf. Gast v. American Cas. Co. of Reading, Pa., 99 N.J. Super. 538 (App. Div. 1968) (payees who did not receive proceeds of draft because of forged endorsements had cause of action in conversion against drawer-drawee who paid draft on forged endorsement.) The basic practical problem is one familiar to the law. The wrong person obtained the funds and is no longer available. The novel question for decision is what is the effect of N.J.S.A. 12A:3-120 making a bank through which a draft is payable a collecting bank. See Murray, "Drafts Payable Through Banks," 77 Comercial L.J. 389 (1972) (analysis of problems created in the use of drafts, as distinguished from checks, due to the absence of a drawee bank and the designation of the banks through which drafts are payable as collecting banks.)
Plaintiff issued the drafts in settlement of two claims under an insurance policy insuring the mortgagor-owners (husband and wife) of, and the mortgagee of, real property in Newark, New Jersey, against vandalism and fire losses.
The first draft was issued on December 28, 1968, "payable through Fidelity Union Trust Company, Newark, N.J." upon acceptance by Plaintiff and payable to the owners of the *384 property, an attorney who represented owners, a public claims adjuster and the mortgagee. The first draft was sent to the owners. This draft was endorsed by all payees, except the mortgagee. The husband-owner deposited it in his account with National on January 9, 1969 and provisional credit was given. National endorsed the draft, "Pay any bank, banker or trust company P.E.G.,"[1] and transferred and delivered said draft on that date to Fidelity. Fidelity provisionally credited National's account with Fidelity for the draft on that date.
Plaintiff and Fidelity had no defined legal relationship except that created or imposed by N.J.S.A. 12A:3-120.
In accordance with the arrangements between Fidelity and plaintiff, Fidelity presented the first draft to plaintiff on January 10, 1969 for acceptance and authorization of payment. Plaintiff reviewed the draft and authorized and directed Fidelity to pay from a checking account plaintiff had with Fidelity. Fidelity did so and final settlement was issued on January 14, 1969 to National.
On February 27, 1969 plaintiff issued the second draft, "payable through Fidelity Union Trust Company, Newark, N.J." upon acceptance by plaintiff to the order of the owners and mortgagee. The owners endorsed the second draft. The mortgagee did not. On April 2, 1969 the husband-owner-payee deposited it in his account with National. National gave provisional credit. National endorsed the draft, "Pay any bank, banker or trust company, P.E.G.," and transferred and delivered said draft to Fidelity on the same day.
Pursuant to Fidelity's arrangement with plaintiff, Fidelity endorsed the second draft and presented it to plaintiff for acceptance and authorization of payment on or about April 3, 1969. Plaintiff reviewed, accepted and authorized payment of the second draft against plaintiff's checking account at Fidelity. Fidelity debited plaintiff's account and *385 issued final settlement to National on April 7, 1969. Owner obtained proceeds of both drafts.
On May 2, 1969 the mortgagee notified plaintiff that it was foreclosing the mortgage and had not been paid on the two claims. The mortgagee made formal demand for payment upon plaintiff. Plaintiff made demand upon those who endorsed the drafts, other than the banks, for repayment after the mortgagee's demand upon it. Repayment was not obtained. On June 26, 1969 plaintiff issued third and fourth drafts for $2,800 and $700, respectively, to the mortgagee alone. These were paid through Fidelity on July 30, 1969.
Plaintiff made no demand on the banks prior to June 30, 1969. During the two months preceding June 30, 1969 the owner had a modest balance in the account at National, but not a balance sufficient to pay the full amount of the two drafts. The account was closed June 30, 1969. This action was commenced on July 16, 1969. The complaint was the first notice to the banks.
The remaining parties agreed to a stipulation of facts and all moved for summary judgment. The stipulation ends with the following:
* * * the foregoing shall be considered as all the facts on which this Court shall render judgment.
Plaintiff has alleged negligence of defendant banks and breach of warranty of good title under N.J.S.A. 12A:4-207 as the bases of their respective liability to it. If the court finds defendants liable on one of the two grounds, it is unnecessary to consider the other.
Defendant Fidelity has asserted that the action is barred because plaintiff gave no timely notice as required by N.J.S.A. 12A:4-406 or 4-207(4), and that Fidelity acted in accordance with plaintiff's instructions, N.J.S.A. 12A:4-203. Fidelity has asserted a cross-claim against National under N.J.S.A. 12A:4-207.
*386 National has asserted that plaintiff's action must fail because it accepted the draft without endorsement and thereby altered the draft without its consent, N.J.S.A. 12A:3-412(3), and that any claim for negligence is barred by plaintiff's contributory negligence in accepting a draft without all endorsements. Since a claim based upon breach of warranty of good title grounded upon a missing endorsement is not barred by contributory negligence, Feldman Construction Co. v. Union Bank, 28 Cal. App.3d 731, 104 Cal. Rptr. 912 (Ct. App. 1972), the court will not consider it in respect to the claim based upon warranty.
Plaintiff has asserted its right to recovery under N.J.S.A. 12A:4-207(1), which provides:
Each customer or collecting bank which obtains payment or acceptance of an item and each prior customer and collecting bank warrants to its payor bank or other payor who in good faith pays or accepts the item that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; * * *.
Fidelity also has grounded its crossclaim on this section as noted earlier. Since this warranty is imposed by law, even in the absence of an endorsement by a collecting bank, the collecting bank is subject to it.
In the pleadings, the pretrial order, and the stipulation of facts, no defendant raised any question as to the "good faith" of plaintiff in making payment. Although questions of "good faith" frequently present fact questions sufficient to defeat motions for summary judgment, in view of the actions of the parties in this matter the court treats the "good faith" of plaintiff as stipulated.
The first and second draft were deposited with National without the endorsement of the payee-mortgagee. Any negotiable instrument made payable to payees jointly and not in the alternative may be assigned, but not negotiated, without the endorsement of all payees. N.J.S.A. 12A:3-116(b); cf. First National Bank of Bloomingdale v. North *387 Trust Co. of Ridgewood, 18 N.J. Misc. 449, 14 A.2d 765 (Sup. Ct. 1940). The depositor, the collecting bank and plaintiff, were assignees and not holders of these drafts. They held subject to the rights and claims of the owners. Bank of Marshall County v. Boyd, 308 Ky. 742, 215 S.W.2d 850 (Ct. App. 1948). By obtaining payment from plaintiff for the drafts, Fidelity became liable to plaintiff on a warranty of good title, N.J.S.A. 12A:4-207(1), which good title it did not have and had no authority to obtain. When National obtained payment from Fidelity, National became liable on a similar warranty and with a similar lack of good title or authority to obtain it. Similarly, the depositor became liable to National when he received payment from National. Thus, the court hold that plaintiff has a claim against Fidelity and Fidelity has a claim against National.
In analyzing the various defenses asserted, the duty of a drawee-acceptor of a draft should be considered, for, in this case, Plaintiff was the drawer, drawee and acceptor of all drafts.
Prior to the adoption of the Uniform Commercial Code, and indeed of the Negotiable Instruments Law (N.I.L.), the drawee-acceptor of a draft admitted the genuineness of the signature of the drawer, the existence of the payee and the payee's capacity to endorse. The drawee did not admit the genuineness of the signatures of the payees or endorsers. See 11 Am. Jur.2d, Bills and Notes, §§ 597 and 1014. The N.I.L. was basically a codification of these rules. Idem.
The Uniform Commercial Code, in N.J.S.A. 12A:3-413(3), provides that the drawee by "accepting * * * admits * * * the existence of the payee and his then capacity to indorse." And in subparagraph (1) the Code provides that the drawee, by accepting, engages to pay the draft according to the tenor of the draft at the time of its acceptance. This the commentators, in their notes to N.J.S.A. 12A:3-413, state precludes the drawee from denying the validity of the signature of the drawer after acceptance. Thus, plaintiff *388 has not admitted the genuineness of or presence of payees' endorsements by its acceptance of the drafts.
The drawee, under well established law and present provisions of statutory law, has not been, and is not, under a duty to check endorsements. Federal Deposit Ins. Corp. v. Marine National Bank of Jacksonville, 303 F. Supp. 401 (D. Fla. 1969).
In view of the defense raised by Fidelity under N.J.S.A. 12A:4-406, the court has considered whether any duties may be imposed upon a drawee under this section to check for endorsements. The relation between plaintiff and Fidelity is governed by N.J.S.A. 12A:3-120, a new law at the time New Jersey adopted the Uniform Commercial Code. Within the definitions of "customer" and "item" contained in N.J.S.A. 12A:4-104, the provisions of N.J.S.A. 12A:4-406 apply to the plaintiff-Fidelity relationship and the drafts in questions as follows:
When a bank sends to its customers * * * holds items [drafts] pursuant to a request or instructions of its customer * * * and in a reasonable manner makes * * * the items available to its customer, the customer must exercise reasonable care and promptness to examine * * * the items [drafts] to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof. [Emphasis added]
Within the context of the facts before the court, under that section plaintiff had to examine for (1) forgeries of its signature as drawer and (2) any attempts to alter, such as raising the amount. It does not impose a duty to check for forged or missing endorsements. This interpretation is supported by the thought that the statute would have primary application to the typical monthly checking account. Traditionally, the drawer of a check has not been responsible for payments on forged or missing endorsements; the drawee bank has been. See Pratt v. Union National Bank, 79 N.J.L. 117 (Sup. Ct. 1909), aff'd 81 N.J.L. 588 (E. & A. 1919). The court concludes and holds that plaintiff did not *389 breach any duty it had to check for endorsements. Therefore, plaintiff had no duty to give Fidelity notice under N.J.S.A. 12A:4-406.
Fidelity further urges that it acted in accordance with the instructions of its transferor (plaintiff) under N.J.S.A. 12A:4-203, and therefore Fidelity is not liable. Said section provides in relevant part:
* * * only a collecting bank's transferor can give instructions which affect the bank or constitute notice to it and a collecting bank is not liable to prior parties for any such action taken pursuant to such instructions or in accordance with any agreement with its transferor.
On the facts before the court, National was the transferor of Fidelity and plaintiff the transferee. See comment to section 12A:4-203. Further, this defense is not applicable to the claim of plaintiff, for Fidelity received no instructions from its transferor National.
Before passing upon the defense, or offset to liability, based upon N.J.S.A. 12A:4-207(4), which in this Opinion is considered in the context of both defendants, the defense based upon N.J.S.A. 12A:3-412(3) asserted by National is considered.
National urges that
When FNSB endorsed the drafts "Pay any Bk., Bkr., or Tr. Co. P.E.G." and delivered them to Fidelity, Fidelity became the holder of the Drafts, N.J.S.A. 12A:4-201(2) [sic]; [20]. The Drafts, as originally drawn, were payable to two or more payees, jointly and not in the alternative, with the result that neither Draft could, by its terms, be negotiated, discharged or enforced by or on behalf of less than all the payees thereon. N.J.S.A. 12A:3-116(b). By proffering acceptance and payment of the Drafts to less than all the payees, plaintiff varied the terms thereof. N.J.S.A. 12A:3-116(a) * * *.
It concludes that Fidelity assented and National did not, and that National is therefore discharged under N.J.S.A. 12A:3-412(3), which states:
*390 Where the holder assents to an acceptance varying the terms of the draft each drawer and indorser who does not affirmatively consent is discharged.
The defense is not applicable. Fidelity was not, and is not, a "holder" within the meaning of the section quoted above. The endorsement mentioned in the definition of holder, N.J.S.A. 12A:1-201(20), should be considered with the provisions of N.J.S.A. 12A:3-202(2): "An indorsement must be written by or on behalf of the holder * * *." National was not the holder because all the payees had not endorsed the drafts to it. By stamping on the drafts its warranty under N.J.S.A. 12A:4-207(1), National did not elevate its status to that of a holder. Indeed, by transferring the drafts and by paying them to less than all the payees, National converted them, Federal Deposit Ins. Corp. v. Marine National Bank of Jacksonville, 431 F.2d 341 (5 Cir.1970), as did plaintiff, Gast v. American Cas. Co. of Reading, Pa., supra. See also, comments to N.J.S.A. 12A:3-201 and 202, particularly 201(7). In view of the foregoing, it is not necessary to decide whether the alleged act of acceptance and payment was a variation. See comments to N.J.S.A. 12A:3-412.
Finally, Fidelity raises the defense that plaintiff did not give notice of the breach of warranty within a reasonable time after it learned of it on May 2, 1969, and therefore Fidelity is discharged to the extent that it has sustained loss. N.J.S.A. 12A:4-207(4). By stipulation plaintiff did not give notice until July 16, 1969 (when the complaint in this action was filed), or ten weeks after it learned of the breach. Recognizing that the parties stipulated that the husband-owner-payee of the drafts had an account with National until June 30, 1969, when he closed it; that the parties worked on the stipulation jointly; that it was represented to the court at oral argument that the purpose of attaching the monthly statements of such account for May and June 1969 was to show that if National had had notice prior to June *391 30, 1969, National could have offset against some balance, the Court will consider that defense available to National as well, although not expressly pleaded.
In fairness to plaintiff it was represented that certain records had been lost due to mergers and relocation of offices, so that plaintiff could not establish an earlier notice date than July 16, 1969. At oral argument it was also represented that there was no information available about the reason for delay, other than what was in the stipulation, namely, that the payee-mortgagee made demand on May 2, 1969 and stated it had started to foreclose the mortgage. Plaintiff issued replacement drafts on June 26, 1969 to the mortgagee.
What is a reasonable time is a fact question depending upon the circumstances. On the facts available to the court, the court finds that there was an unreasonable delay. Plaintiff issued replacement drafts about three weeks before giving any notice. Certainly, plaintiff knew before it issued the drafts that there was a reasonable basis for the claims. Plaintiff had to take time to locate the first and second drafts, and to attempt to investigate with the payee-mortgagee and others whether in fact the payee-mortgagee had been paid notwithstanding the absence of the endorsement, the status of the foreclosure proceeding, and whether the payee-mortgagee had been paid in full through that source, etc. The court notes that all parties involved were either in one city, i.e., Newark, New Jersey, or had offices there at that time. On the facts as outlined in the stipulation and the statements made at oral argument, the court finds that a reasonable time was two weeks, and that plaintiff delayed unreasonably in waiting ten weeks to give notice.
Fidelity did not give notice to National until after the suit, for it had no knowledge until that time. Plaintiff urges, therefore, that as against it Fidelity suffered no loss because the owner-payee had no account with Fidelity and Fidelity gave prompt notice to National as soon as the suit papers were filed. Plaintiff then urges that, as against Fidelity's *392 crossclaim, National had no defense because of the prompt notice.
There is no question but that National has the burden of proof to establish its loss and the amount thereof. The monthly statements do show that during May and June 1969 there were a number of deposits, withdrawals and a small balance. Admittedly there is a good deal of speculation as to what would have happened as to deposits if National had made an offset and when it would have acted (considering the deposits that were made in and about the relevant time.) The court holds that National would have recouped some amount if notice had been given within a reasonable time, and fixes it at $200.
The impact of the provisions here considered (particularly N.J.S.A. 12A:4-207) is to make the initial collecting bank responsible for checking endorsements so that the collection process will be speedy and efficient, see Federal Deposit Ins. Corp. v. Marine National Bank of Jacksonville, 431 F.2d 341 (5 Cir.1970) (bank of deposit liable for draft with missing endorsement in suit by assignee of payee); for the purpose of this decision, the person liable under N.J.S.A. 12A:4-207 is National. However, National has sustained loss due to plaintiff's failure to give reasonable notice. Plaintiff should not be allowed to use the existence of an intermediate bank in the collection chain, or process, to create an artificial immunity to its failure to give notice within a reasonable time. The predicate of liability on the part of National is to encourage the first bank to keep improper paper out of the collection process  an increasingly important function in light of an ever-increasing mechanization of the collection and payment process. Similarly, when claims are to be made, they should be made within a reasonable time on the facts, and the initial bank should have the benefit of N.J.S.A. 12A:4-207(4) arising from the failure to give that notice. On the facts here present plaintiff failed to act within a reasonable time and it should bear the loss to *393 the extent that there is a basis for establishing the existence and amount of the loss.
Plaintiff is entitled to recover on its claims $2,800 and $700, or an aggregate of $3,500, less the loss of $200, or a net of $3,300. The underlying claims were liquidated in amount. The assertion of defenses even in good faith does not bar the allowance of interest. Kamens v. Fortugno, 108 N.J. Super. 544 (Ch. Div. 1970). Conceptually, the right to deduct the loss, which National has, is an independent right and is unliquidated in amount. The existence of this right, and even its recognition, should not bar the allowance of interest. Accordingly, interest will be allowed at 6% on $3,300 from July 16, 1969, the date the complaint was filed, since that was the date of demand. In an appropriate case a court might well allow interest on the amount of the loss from a date before the claim is asserted against the collecting banks. On the facts of this case, and considering the amounts involved, this court decides not to allow interest on the loss set at $200 prior to July 16, 1969.
Judgments should be submitted in accordance with this opinion. No costs.
NOTES
[1] P.E.G. is an abbreviation meaning prior endorsements guaranteed.