GREAT AMERICAN INSURANCE COM-
PANIES, Plaintiff and Appellee,

v.

AMERICAN STATE BANK OF
DICKINSON, Defendant and
Appellant.

Civ. No. 10979.

Supreme Court of North Dakota.

March 19, 1986.

Conmy, Feste, Bossart, Hubbard & Corwin, Fargo, for plaintiff and appellee; argued by Kim E. Brust.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant; argued by James D. Geyer; appearance by Ward M. Kirby.

LEVINE, Justice.

American State Bank of Dickinson [American State Bank] appeals from a district court judgment in favor of Great American Insurance Companies [Great American] for conversion of a "payable through" [1] draft which Welch Rathole Service [Welch] deposited in its account at American State Bank without the endorsement of a joint payee, Ford Motor Credit Company [Ford Credit]. We reverse and remand for further proceedings.

Great American insured a truck owned by Welch and financed by Ford Credit. That insurance policy listed Welch and Ford Credit as loss payees for claims on the truck. The truck was involved in an accident, and Great American issued a $13,-000 "payable through" draft, dated May 20, 1982, for the claim. The draft was made payable to the order of Welch and Ford Credit, and Great American delivered it to Welch. Ford Credit's interest in the draft was $9,712.08, and Welch's interest was $3,287.92. Welch endorsed and deposited the draft in its account at American State Bank without the endorsement of Ford Credit. On May 27, 1982, American State Bank endorsed the draft, credited Welch's account in the amount of $13,000, and forwarded the draft through banking channels to Great American's bank, Provident, for payment. Provident presented the draft to Great American, and on June 3, 1982, an employee of Great American reviewed and initialed the draft in accordance with its procedure with Provident for paying payable through drafts.

Great American took possession of the truck and sold it for salvage to George Franchuk for $3,000. In December 1982, Franchuk informed Great American that Ford Credit would not release its lien on the truck because it had not been paid for its interest in the truck. Welch had filed for bankruptcy on November 5, 1982, and, in order to obtain clear title for Franchuk, Great American paid Ford Credit $9,712.08 for a release of its lien. On March 30, 1983, Ford Credit assigned Great American all its interest and rights arising out of the May 20 payable through draft.

Great American, as Ford Credit's assignee, commenced an action against American State Bank alleging that it converted the May 20 draft and that it breached its

---

**1.** Section 41–03–20 [U.C.C. § 3–120], N.D.C.C., defines a "payable through" draft and provides:
  "*41–03–20. (3–120) Instruments 'payable through' bank.* An instrument which states that it is 'payable through' a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument."

The drawer of a "payable through" draft is also the drawee. See Murray, "Drafts Payable Through Banks," 77 Commercial L.J. 389 (1972) for a discussion of the use of payable through drafts.

presentment warranties. Great American subsequently moved to dismiss its cause of action based on breach of presentment warranties and proceeded solely on the claim for conversion. After a bench trial, the court granted judgment against American State Bank for $9,712.08 plus interest, and costs and disbursements of $1,808.39. American State Bank appealed.

American State Bank contends that its failure to obtain the endorsement of a copayee of a negotiable instrument does not constitute conversion under the Uniform Commercial Code [U.C.C.] because Section 41–03–56(1) [U.C.C. § 3–419(1) ], N.D.C.C., refers only to a forged endorsement and not a missing endorsement in defining conversion. American State Bank points out that there is no common law in North Dakota where the law is declared by statute, Section 1–01–06, N.D.C.C., and that the U.C.C. may be supplemented by common law "unless displaced by the particular provisions of this title." Section 41–01–03 [U.C.C. § 1–103], N.D.C.C. American State Bank argues that Section 41–03–56(1) [U.C.C. § 3–419(1) ], N.D.C.C., displaces the common law for conversion of negotiable instruments in North Dakota, and it is thus not liable for conversion.

Great American counters that a collecting bank that pays a draft without the endorsement of a joint payee is liable to that joint payee for conversion under common law and also under the U.C.C. because the general principles of common law supplement the U.C.C. Section 41–01–03 [U.C.C. § 1–103], N.D.C.C. We agree.

■ We are not persuaded by American State Bank's argument because the particular language of Section 41–01–03 [U.C.C. § 1–103], N.D.C.C., permitting common law supplementation of the U.C.C., controls the general language of Section 1–01–06, N.D.C.C. See Section 1–01–07, N.D.C.C. We do not believe that the common law of conversion has been displaced by the particular provisions of the U.C.C. See *Willow City v. Vogel, Vogel, Brantner & Kelly,* 268 N.W.2d 762 (N.D.1978).

■ Although Section 41–03–56(1) [U.C.C. § 3–419(1) ], N.D.C.C., does not specifically provide that payment without the endorsement of a payee constitutes conversion, we agree with those jurisdictions which have supplemented the U.C.C. with common law and determined that, for purposes of conversion of a negotiable instrument, there is "no legal difference between payment of an instrument on a forged endorsement and payment on no endorsement by the payee at all." *E.g., Humberto Decorators, Inc. v. Plaza National Bank,* 180 N.J.Super. 170, 174, 434 A.2d 618, 619 (1981). See generally Annot., 47 A.L.R.3d 537, 540 (1973); 6 Anderson, Uniform Commercial Code § 3–419:18 (3rd Ed.).

■ Conversion is the wrongful exercise of dominion over the property of another in a manner inconsistent with, or in defiance of, the owner's right. *Dairy Dept. v. Harvey Cheese, Inc.,* 278 N.W.2d 137 (N.D. 1979). We believe that payment of an instrument on a forged endorsement and payment on no endorsement by the payee both constitute the wrongful exercise of dominion over the property of another in a manner inconsistent with the owner's rights. In our view, the absence of an endorsement presents a more compelling case for conversion than a forged endorsement because a missing endorsement is easily discernible, while a forged endorsement is the result of an error in the identification of a payee. See *United States Fidelity & Guaranty Co. v. Peoples National Bank of Kewanee,* 24 Ill.App.2d 275, 164 N.E.2d 497 (Ill.App.Ct.1960). Accordingly, we hold that a bank that pays a draft without obtaining the endorsement of a co-payee may be liable to that co-payee for conversion of the draft.

■ Section 41–03–56(3) [U.C.C. § 3–419(3) ], N.D.C.C., provides the following defense for conversion actions:

"*41–03–56.   (3–419) Conversion of instrument—Innocent representative.*

\*      \*      \*      \*      \*      \*

"3. Subject to the provisions of this title concerning restrictive endorsements

a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

On appeal, American State Bank characterizes its conduct in accepting the draft without Ford Credit's endorsement as a "mistake." An employee of American State Bank testified that its paying the draft without Ford Credit's endorsement was not in accordance with reasonable commercial standards, and the trial court's memorandum opinion states that "American State has acknowledged that accepting the draft with a missing endorsement is not in accordance with reasonable commercial banking standards." We agree. Consequently, American State Bank may not avail itself of the defense provided in Section 41-03-56(3) [U.C.C. § 3-419(3)], N.D.C.C.

American State Bank asserts that several statutory provisions of the U.C.C. preclude its liability. The trial court ruled to the contrary. Our analysis is based upon the U.C.C. statutory scheme of liability for negotiable instruments.

The U.C.C. provides three theories of liability for negotiable instruments: (1) contract liability, (2) warranty liability, and (3) conversion liability. White & Summers, Uniform Commercial Code §§ 13-6, 13-11, 15-4 (2nd Ed.1980); Hillman, McDonnell, Nickles, Common Law and Equity Under

the Uniform Commercial Code, ¶ 14.01[2] (1985).

The contractual liabilities on the instrument run against those who sign the instrument and are generally set out in Sections 41-03-50 [U.C.C. § 3-413] and 41-03-51 [U.C.C. § 3-414], N.D.C.C. An endorser's liability on the instrument is based on Section 41-03-51 [U.C.C. § 3-414], N.D.C.C., and requires presentment, dishonor, and notice of dishonor before imposition of contractual liability through the recredit of an account and charge-back.[2]

In addition to contractual liability on the instrument, the transferor of an instrument makes certain presentment warranties to its transferee and a collecting bank makes those warranties to the payor bank or other payor. Sections 41-03-57 [U.C.C. § 3-417] and 41-04-17 [U.C.C. § 4-207], N.D.C.C.[3] Although the contractual liability of an endorser of an instrument may be discharged by failure to make a proper presentment, to dishonor, or to give timely notice of dishonor; or because payment is final under Sections 41-03-55 [U.C.C. § 3-418][4] and 41-04-23 [U.C.C. § 4-213], N.D.C.C., a party in the collection chain may still be liable on the basis of a breach of one or more of the presentment warranties. White & Summers, Uniform Commercial Code, § 16-1 (2nd Ed.1980); 7 Anderson, Uniform Commercial Code, § 4-207:13 (3rd Ed.1985); Section 41-04-26 [U.C.C. § 4-302], N.D.C.C.; Section 41-04-22(5) [U.C.C. § 4-212(5)], N.D.C.C.

In addition to contract liability and warranty liability, conversion liability is also available to the "owner" of an instrument.

---

**2.** The requirements for presentment, dishonor, and notice of dishonor are set forth in Sections 41-03-57 through 67 [U.C.C. §§ 3-501 through 3-511], N.D.C.C.

**3.** The warranties of Section 41-04-17 [U.C.C. § 4-207], N.D.C.C., are given by bank customers and collecting banks and pertain directly to the check collection process. The warranties given by the customer or collecting bank to the payor bank or other payor are that the customer or collecting bank has good title to the item; that he has no knowledge that the signature of the drawer is unauthorized; and that the item has

not been materially altered. U.C.C. § 4-207(1). The warranties of Section 41-03-57 [U.C.C. § 3-417], N.D.C.C., are given by any person who obtains payment or acceptance and any prior transferor and are similar to those warranties given by a customer or collecting bank under U.C.C. § 4-207.

**4.** The final payment rule of Section 41-03-55 [U.C.C. § 3-418], N.D.C.C., is by its terms, not applicable to breach of warranty on presentment under Section 41-03-54 [U.C.C. § 3-417], N.D.C.C.

White and Summers, Uniform Commercial Code, § 15–4 (2nd Ed.1980).

These theories of liability form the basis for according separate treatment for a forged drawer's signature and a forged endorsement in the ordinary check collection case where the drawer and drawee are different parties. Generally, a drawee bank is liable to its drawer customer for payment of a draft bearing either a forged drawer's signature or a forged endorsement. The drawee bank's liability may be limited by Section 41–04–33 [U.C.C. § 4–406], N.D.C.C., which requires the drawer customer to exercise reasonable care and promptness to examine his bank statement and items to discover and notify the drawee bank of any unauthorized signatures or endorsements or alterations. In the case of a forged endorsement, the drawee generally may pass liability back up the collection chain to the party who took from the forger and, of course, to the forger himself, if available. See generally, White and Summers, Uniform Commercial Code, ch. 15 (2nd Ed.1980); see also *National Credit Union Administration v. Michigan National Bank*, 771 F.2d 154 (6th Cir.1985); *Perini Corp. v. First National Bank*, 553 F.2d 398 (5th Cir.1977). In this respect, the U.C.C. treats a missing endorsement and a forged endorsement the same. *See generally* Murray, "Joint Payee Checks—Forged and Missing Indorsements," 78 Commercial L.J. 393 (1973). In the case of a forged drawer's signature, however, liability generally rests with the drawee because the drawee will almost never have a warranty cause of action and the final payment rule will also bar a restitutionary cause of action. See generally, White and Summers, Uniform Commercial Code, ch. 16 (2nd Ed. 1980); see also *National Credit Union Administration v. Michigan National Bank, supra; Perini Corp. v. First National Bank, supra.*

In the instant case, Great American is both the drawer and drawee of the "payable through" draft. See fn. 1. Ford Credit assigned all of its interest and rights arising out of the May 20 draft to Great American. The trial court noted that:

"Ford Credit could have brought an action against either American State or Great American for conversion under NDCC Section 41–03–56 (3–419) or against Great American on the underlying obligation. Great American would have then been forced to proceed against American State for breach of its warranties. Instead, Great American paid Ford Credit and obtained an assignment of its cause of action. Although Great American had set forth an action for breach of warranties, it amended the Complaint and proceeded only on the assignment."

■ We agree with the trial court's assessment. Under the full range of potential theories of liability and parties available under the U.C.C., Ford Credit could have brought an action against either American State Bank or Great American for conversion under Section 41–03–56 [U.C.C. § 3–419], N.D.C.C., or against Great American on its obligation under the insurance contract. If Ford Credit had proceeded directly against Great American, Great American, as drawee, could have brought an action for indemnity against American State Bank, as collecting bank, for breach of the presentment warranties and, pursuant to Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C., American State Bank could have asserted that its liability was discharged to the extent of any loss caused by the delay in making the claim. *Phoenix Assurance Co. v. Davis*, 126 N.J.Super. 379, 314 A.2d 615 (1974). If Ford Credit had proceeded directly against American State Bank for conversion, we believe American State Bank could have asserted against Great American that its (American State Bank's) liability was discharged to the extent of any loss caused because Great American did not make a claim for breach of warranty within a reasonable time after Great American learned of the breach pursuant to Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C. Although Great American, as Ford Credit's assignee, brought the instant action for conversion and not for breach of the presentment warranties, we do not believe

that assignment precludes American State Bank from asserting that its liability was limited under the provisions of Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C. See *Sun 'N Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978). That section provides:

"4. Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim."

■ American State Bank argues that the date when Great American's employee initialed the check, June 3, 1982, should be used as the date when Great American learned of the breach under Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C. Because Welch's account had sufficient funds to cover the draft on June 4, 1982, American State Bank contends that it should be discharged from any liability.

Our research has revealed no cases specifically addressing this issue within the context of a "payable through" draft paid over a missing endorsement.

The objective of the U.C.C. statutory scheme for check collections, and particularly the warranty provisions, is to place the loss on the wrongdoer, or because the wrongdoer is usually unavailable or unable to pay, upon the party who last dealt with the wrongdoer because that party is in the best position to verify and obtain the necessary endorsements. *Stapleton v. First Security Bank*, 675 P.2d 83 (Mont.1983). The policy behind the U.C.C. warranty provisions is to speed up the collection process and to remove the burden from every bank in the collection chain to meticulously check the endorsements of each item transferred, and, thus, the first bank taking an item for collection is primarily responsible for obtaining the necessary endorsements. *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville*, 303 F.Supp. 401 (M.D.Fla.1969); *Feldman Construction Co. v. Union Bank*, 28 Cal. App.3d 731, 104 Cal.Rptr. 912 (1972); *See generally* Murray, "Joint Payee Checks—Forged and Missing Indorsements," 78 Commercial L.J. 393 (1973). Thus, a drawee bank that pays an item over a missing endorsement is generally not obligated to discover that missing endorsement. *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville, supra; See generally* Murray, "Joint Payee Checks—Forged and Missing Indorsements," 78 Commercial L.J. 393 (1973). Consequently, in the usual check collection case involving a drawer customer and a drawee bank, a drawee bank does not "learn of the breach" within the meaning of Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C., when it pays an item over a missing endorsement. Additionally, in the usual check collection case, the drawer customer has certain responsibilities with regard to checking his banking statement and items for alterations or unauthorized signatures or endorsements. Section 41–04–33 [U.C.C. § 4–406], N.D.C.C.

However, the instant case involves a payable through draft in which the drawer and drawee are the same entity, and that entity is not a bank. That entity initially issued the joint payee draft and was in a position to check the draft for the necessary endorsements before paying it. *See* Murray, "Drafts 'Payable Through' Banks," 77 Commercial L.J. 389 (1972). Professor Murray suggests that a drawer-drawee insurance company is more able to detect a forged payee's signature on a draft by comparing the signature on the draft with the insured's signature on an insurance application form or claim form. *Id.* at 390. We need not go so far. The instant case involves a missing endorsement which is easily discernible from the face of the instrument and requires no such comparison. In such a case, a breach of presentment warranties is evident from the face of the instrument. Both logic and equity militate in favor of imposing primary responsibility on the drawer-drawee to check the very

draft which it issued in the first place to the "forger."

Taking into account that, in the usual check collection case, the drawer customer has certain responsibilities for checking his statement and items and that, in the instant case, the drawer and drawee are one and the same and in a position to check the draft for missing endorsements, we believe that June 3, 1982, was the date when Great American learned, or should have learned, of the missing endorsement and the consequent breach of the presentment warranties pursuant to Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C. Accordingly, we conclude that for purposes of a payable through draft with missing endorsements, the party claiming a breach of presentment warranties "learns of the breach" within the meaning of Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C., when it approves the draft for payment.

In the instant case, the trial court made no finding on what was a reasonable time after Great American learned of the breach and, if a claim were not made within that time, the extent of any loss caused by the delay in making a claim.[5] Findings on these matters are necessary for a resolution of this issue and may require additional evidence on the balance in Welch's account on certain dates. Accordingly, we reverse the judgment and remand the case for further proceedings consistent with this opinion.[6]

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

5. We reject American State's argument that June 4, 1982, was the appropriate date for determining the extent of loss because that would impose a stricter requirement on Great American than that provided by the midnight deadline. Section 41–04–04(1)(h) [U.C.C. § 4–104(1)(h)], N.D.C.C.

6. The other U.C.C. provisions raised by American State Bank relating to final payment, presentment, dishonor, notice of dishonor, and discharge would be applicable to a contract action but are not applicable to an action for conversion and would not preclude an action for breach of presentment warranties.

American State Bank also contends that the trial court erred in determining that laches and waiver were not applicable to this case. These issues involve the same argument as that made under Section 41–04–17(4) [U.C.C. § 4–207(4)], N.D.C.C. Because of our resolution of that issue, we need not address American State Bank's argument concerning laches and waiver.