279 N.J. Super. 427 (1995)
652 A.2d 1266
DAVID MANDELBAUM, PLAINTIFF/RESPONDENT-CROSS-APPELLANT,
v.
P & D PRINTING CORP., STANLEY PHILLIPS, JR., DEFENDANTS, AND PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT, AND HAMILTON BANK AND ROCKBANK, DEFENDANTS/RESPONDENTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1995.
Decided February 15, 1995.
*429 Before Judges SHEBELL, SKILLMAN and WALLACE.
Albert E. Fershing argued the cause for plaintiff/respondent, cross-appellant, David Mandelbaum (Shurkin & Fershing, attorneys; Albert E. Fershing, on the brief).
Donald M. Garson argued the cause for defendant-appellant, Pennsylvania National Mutual Casualty Company (Buttafuoco, Karpf & Arce, attorneys; Mr. Garson, on the brief).
*430 Darlene J. Pereksta argued the cause for defendant/respondent, cross-respondent, Rockbank (formerly North Plainfield State Bank) (Williams, Caliri, Miller & Otley, attorneys; Ms. Pereksta, on the brief).
Scott C. Pyfer argued the cause for defendant/respondent, cross-respondent, Hamilton Bank (Patterson & Weir, attorneys; Mark E. Herrera and Mr. Pyfer, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
On December 21, 1990, plaintiff, David Mandelbaum, filed a three count complaint against P & D Printing Corp. (P & D), P & D's owner, Stanley Phillips, Jr. (Phillips), Pennsylvania National Mutual Insurance Companies (Penn National), Hamilton State Bank (Hamilton), and North Plainfield State Bank, now Rockbank (Rockbank). Plaintiff asserted in count one that P & D and Phillips converted a $41,054.60 draft issued by Penn National and made payable to P & D, plaintiff, and a public adjuster. Count two alleged that Penn National failed to pay a $41,054.60 claim for windstorm loss sustained by plaintiff on November 21, 1989. Count three alleged that Penn National (drawer-drawee), Hamilton Bank ("pay through" collecting bank), and Rockbank (depository bank) deprived plaintiff of the amount of the draft by allowing payment of the draft to P & D without requiring plaintiff's endorsement. Each defendant answered denying liability and asserting cross-claims against the others. Following discovery, all parties moved for summary judgment.
On April 29, 1991, the motion judge granted plaintiff's motion for summary judgment against P & D and Penn National, and dismissed the claims asserted by plaintiff and Penn National against Hamilton Bank and Rockbank. Subsequently, Penn National was granted judgment against P & D, and Penn National and plaintiff obtained judgments against Phillips. Penn National appeals and plaintiff cross-appeals.
*431 Plaintiff owned a building that was occupied by P & D as a commercial tenant under a lease requiring P & D to maintain insurance on the premises. P & D procured insurance and plaintiff was named as an additional insured. On November 21, 1989, while insured by Penn National, the premises were damaged by a windstorm. Plaintiff submitted a proof of loss and a signed settlement agreement to Penn National on behalf of himself and P & D, purporting to act on his own behalf and as attorney for P & D. Penn National issued a draft for $41,054.60 payable to P & D Printing Corp., David Mandelbaum, and Sarasohn & Company Public Adj. Each payee was listed on a separate line and there were no commas following the names of the payees. The back of the draft stated: "DRAFT MUST BE ENDORSED BY ALL PAYEES." Penn National forwarded the draft to P & D.
Phillips deposited the draft, endorsed only with a stamp stating "P & D Printing Deposit Only," into P & D's account at Rockbank. Rockbank then sent the draft to Hamilton as the draft read "Pay Through Hamilton Bank." Hamilton Bank received the draft and submitted it to Penn National for acceptance. After Penn National accepted the draft, Hamilton Bank debited Penn National's account and transmitted an advice to Rockbank that the draft had cleared. Rockbank then credited the account of P & D. Subsequently, P & D removed all but $100 from its account, and plaintiff never received any settlement proceeds. At oral argument on the motion, Rockbank revealed to the court for the first time that the draft at issue was the second draft from Penn National made payable to P & D and Mandelbaum, and that the first draft (in settlement of another claim) was also deposited with P & D's endorsement alone, forwarded, and approved for payment. Rockbank urges that this prior transaction served as authorization for its acceptance of the present draft in the same manner.
In granting summary judgment to plaintiff against Penn National, the motion judge held:

*432 [B]y virtue of its having accepted the draft when there were insufficient endorsements, Pennsylvania National Mutual Casualty Insurance Company converted the draft, and therefore, is liable to David Mandelbaum.
We affirm that ruling. N.J.S.A. 12A:3-419(1)(c) provides that "[a]n instrument is converted when ... it is paid on a forged indorsement."[1] Payment of a draft or check with a missing endorsement is the equivalent of payment of a forged instrument and constitutes conversion against the non-signing payee. Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J. Super. 170, 174, 434 A.2d 618 (App.Div. 1981); see Santos v. First Nat'l State Bank, 186 N.J. Super. 52, 72, 451 A.2d 401 (App.Div. 1982); Salsman v. Nat'l Community Bank, 102 N.J. Super. 482, 492, 246 A.2d 162 (Law Div. 1968), aff'd o.b., 105 N.J. Super. 164, 251 A.2d 460 (App.Div. 1969). Relying on various theories, a number of courts have held that a drawer-drawee is liable for payment of a draft containing an unauthorized endorsement. See, e.g., Gast v. American Casualty Co., 99 N.J. Super. 538, 542, 240 A.2d 682 (App.Div. 1968); Morris v. Ohio Casualty Ins. Co., 35 Ohio St.3d 45, 517 N.E.2d 904, 910 (1988); The Florida Bar v. Allstate Ins. Co., 391 So.2d 238, 241 (Fla. Dist. Ct. App. 1980), review denied, 399 So.2d 1140 (1981); Great American Ins. Cos. v. American State Bank, 385 N.W.2d 460, 464 (N.D. 1986).
*433 Penn National's liability may also, as was alleged in plaintiff's complaint, be grounded on Penn National's failure to satisfy the loss against which it insured plaintiff. See GMAC v. Abington Casualty Ins. Co., 413 Mass. 583, 602 N.E.2d 1085, 1087 (1992); Bernardo v. Anello, 61 Ohio App.3d 453, 573 N.E.2d 126, 129 (1988). Penn National's assertion that P & D was the apparent agent of plaintiff is frivolous. Plaintiff submitted a proof of loss for damages that he alone sustained. Although he signed the proof of loss and the settlement agreement on behalf of himself and P & D, listing himself as attorney for P & D, this action cannot be said to have created a reasonable basis for believing that P & D was plaintiff's agent for the purposes of receiving payment. Penn National itself no doubt recognized this as it created the draft so that the endorsement of plaintiff was unequivocally required, and further directed on the back of the instrument: "DRAFT MUST BE ENDORSED BY ALL PAYEES." Payment to P & D alone did not discharge Penn National's contractual obligation to plaintiff.
Penn National asserts that in any event both banks breached their presentment warranties under N.J.S.A. 12A:4-207 by accepting and forwarding the draft for payment without plaintiff's endorsement. See N.J.S.A. 12A:3-116(b).
N.J.S.A. 12A:4-207 provides:
(1) Each customer or collecting bank[2] who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title....
* * * * * * * *
(4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim.
*434 The question of whether the presentment warranties apply to drafts that a drawer-drawee approves for payment was considered many years ago by a Law Division judge in Phoenix Assur. Co. v. Davis, 126 N.J. Super. 379, 314 A.2d 615 (Law Div. 1974). The court held in Phoenix that a drawer-drawee was entitled to the protection of the presentment warranties under N.J.S.A. 12A:4-207, despite its approval of payment of the draft. Id. at 388, 314 A.2d 615. However, the judge in the present case considered the decision in Phoenix to be "wrong." He held that the presentment warranty did not apply because the drawer-drawee, Penn National, approved payment of the draft with a missing endorsement.
In Phoenix, the insurance company issued two drafts "payable through" Fidelity Bank, with the mortgagor, mortgagee, an attorney, and an adjustor as payees. Both drafts were deposited by the mortgagor in the mortgagor's account without the endorsement of the mortgagee. Id. at 384, 314 A.2d 615. The depository bank provisionally credited the mortgagee's account and forwarded the draft to Fidelity, the "pay through" bank. Id. Fidelity presented the drafts to the insurer, which approved payment of the drafts. Id. Fidelity debited the insurance company's account and issued final settlement to the depository bank. Id. at 384-385, 314 A.2d 615. The depository bank then permitted use of the funds by the mortgagor. Id. at 385, 314 A.2d 615. After notification from the mortgagee that it had not received payment, the insurance company issued replacement drafts to the mortgagee, and then notified the banks of the missing endorsements. Id.
The Phoenix court held that:
[b]y obtaining payment from plaintiff [drawer-drawee] for the drafts, Fidelity [pay through bank] became liable to plaintiff on a warranty of good title, N.J.S.A. 12A:4-207(1), which good title it did not have and had no authority to obtain. When National [depository bank] obtained payment from Fidelity, National became liable on a similar warranty and with a similar lack of good title or authority to obtain it.
[Phoenix Assur. Co. v. Davis, supra, 126 N.J. Super. at 387, 314 A.2d 615.]
*435 The court also held that a drawer-drawee is not under a duty to check endorsements. Id. at 388, 314 A.2d 615 (citing FDIC v. Marine Nat'l Bank of Jacksonville, 303 F. Supp. 401 (D.Fla. 1969)).
The judge in the present case relied on Messeroff v. Kantor, 261 So.2d 553 (Fla. Dist. Ct. App. 1972), which held that the collecting banks were relieved of liability by U.C.C. § 3-419(3). Messeroff, supra, 261 So.2d at 555. See also Larkin Gen. Hosp. v. Bank of Florida, 464 So.2d 635, 637 (Fla. Dist. Ct. App. 1985). This provision relieves a depository or collecting bank of liability "in conversion or otherwise" to the true owner if the bank acted in good faith and in accordance with reasonable commercial standards. N.J.S.A. 12A:3-419(3). Comment 6 to U.C.C. § 3-419 notes that although a collecting bank is not liable to the payee if the bank conforms to reasonable commercial practice, this defense does not relieve the collecting bank of liability to other banks in the collection chain for breach of the presentment warranty. In any event, we are convinced that as a matter of law, a depository bank that accepts and forwards for collection without notice or reservation a draft that fails to contain required endorsements, has not acted in a commercially reasonable manner and has breached its presentment warranties, and is therefore not protected by N.J.S.A. 12A:3-419(3).
Even with regard to forged endorsements, courts have held that the depository bank violates its presentment warranty by accepting for deposit and forwarding through banking channels a draft that contains a forged endorsement. First Nat'l Bank v. Progressive Casualty Ins. Co., 517 S.W.2d 226 (Ky. Ct. App. 1974). The presentment warranty extends to the downstream banks in the banking stream as they are innocent parties and are relatively unable to protect against loss, even in the case of a missing endorsement, in today's fast flowing banking commerce.
We must, however, separately consider the issue of whether the drawer-drawee insurance company should also receive the protection of the presentment warranties. The motion judge concluded that the drawer-drawee was in a position to detect a shortcoming *436 such as a missing endorsement, and, therefore, should bear the loss, despite the absence of any showing of negligence or unreasonable commercial practice. There is legal authority supporting his position.
In Great American Ins. Cos. v. American State Bank, 385 N.W.2d 460 (N.D. 1960), the North Dakota Supreme Court held that the drawer-drawee has the primary responsibility for checking endorsements. Id. at 465. The court concluded "that for purposes of a `payable through' draft with missing endorsements, the party claiming a breach of presentment warranties `learns of the breach' within the meaning of [§ 4-207(4)] when it approves the draft for payment." Id. at 466. The holding in Great American Ins. precludes the drawer-drawee from asserting a breach of the presentment warranty if it approves payment of a draft with a missing endorsement.
Professor Daniel E. Murray agrees with the position advanced in Great American Ins. In considering its application to forged endorsements, Professor Murray observes:
There seems to be little doubt that Sections 3-417(1) and 4-207(1)(a) of the UCC were designed to cover the usual case where neither the collecting bank nor the drawee-payor have any real opportunity to detect a forgery of the payee's signature. This same inability to detect forgery of the payee's signature follows down the collection line until the first collecting bank is reached, and it has been held that this bank has the primary responsibility to check the endorsements to see that they are proper in order to speed the transfer and collection of items by removing the burden on each subsequent bank to inspect and verify each endorsement. Should this warranty rationale be followed when the drawer-drawee inspects the draft and gives its approval as a condition precedent to payment by the last collecting bank  the bank through whom the draft is payable? If anyone is in a position to detect forgeries in the payee's name, it is the drawer-drawee insurance company which is able to compare the alleged-payee insured's signature on the draft with the insured's signature on an insurance application form, claim forms, letters, etc. before it approves payment of the draft.
[Daniel E. Murray, Drafts "Payable Through" Banks, 77 Com.L.J. 389, 390 (1972) (footnotes omitted).]
Professor Murray's observation that a drawer-drawee insurance company is also in a position to discover forged endorsements, if correct, would appear to apply as strongly with regard to missing endorsements. As stated in another context:

*437 The absence of an endorsement by the holder is, in our view, more serious than a forged endorsement for the reason that the former is easily discernible while the latter is the result of an error in the identification of the payee. If, as has been said, it is the duty of the cashing bank to know to a positive certainty the identification of the payee or the payees named therein and its failure so to do imposes a duty of reimbursing the drawee, it seems abundantly clear that the failure to secure the endorsement of all the payees imposes an even greater duty on the cashing bank.
[U.S. Fidelity & Guar. Co. v. Peoples National Bank, 24 Ill. App.2d 275, 164 N.E.2d 497, 500 (Ill. App.Ct. 1960).]
However, § 4-207 is based on the premise that the depository bank is principally responsible for checking endorsements. In addition, there is a marked absence of information before this court from any source, as well as an absence in the cases or treatises, as to the practicality of requiring the drawer-drawee to promptly inspect and approve endorsements on drafts presented to it for approval after passage through the banking stream. We perceive that approval of the draft by the drawer-drawee should constitute only a promise to pay premised on the collecting banks' § 4-207 warranties that the draft is in proper order for payment.
The reason for imposing the § 4-207 warranty as a matter of law is to speed up the collection and transfer of checks and to take the burden off each bank to meticulously check the endorsements of each item transferred. Following that logic, the first bank taking in the item for collection is primarily responsible for checking the endorsements to make sure they are proper. Each bank then warrants to each subsequent bank in the collection chain that the endorsements are good....
The rationale suggested puts the burden directly upon the first bank in the collection chain to make sure the endorsements are valid. This is reasonable because the first bank is in a better position to insure that it is taking the item from someone with good title than are subsequent banks in the chain. If the rationale is to facilitate the speedy transfer and collection of items by removing the burden for each bank to inspect and verify each endorsement, subsequent banks are not negligent if they do not thoroughly inspect each item. In other words, the warranty feature of the statute is designed to remove the duty of each bank to check the endorsements....
[FDIC v. Marine Nat'l Bank, 303 F. Supp. 401, 403 (M.D.Fla. 1969).]
In Girard Bank v. Mount Holly State Bank, 474 F. Supp. 1225 (D.N.J. 1979), the court also noted:
The overriding scheme of the Code is to place liability on the person who takes from the forger, which is often the depository bank. The rationale is that this party is normally in the best position to detect the forgery and prevent the fraud. *438 See, e.g., Perini Corp. v. First National Bank of Habersham County, 553 F.2d 398, 405 (5th Cir. 1977). This has long been the policy of negotiable instruments law. See, e.g., Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 189 [104 A.2d 288] (1954).
[Girard Bank, supra, 474 F. Supp. at 1230-31.]
We hold that once approved and forwarded through banking channels for collection, banks and drawees down the line are entitled to rely on the endorsement guarantee of the depository bank. The guarantee will remain viable despite the fact that the drawee approves payment of a draft containing either a forged or missing endorsement. Although theoretically the drawer-drawee may be in a position to check for missing endorsements or forgeries, more immediate and adequate means are available to the depository bank to make such verifications. Because the depository bank has a clear duty to check endorsements and is able to physically inspect and handle the draft at deposit, we conclude that it is in a better position to discover a defective endorsement. There is no evidence here that Penn National actually inspected the draft for missing endorsements prior to approval. We take no position as to the defenses, if any, available to a bank such as Rockbank in that circumstance. Rockbank, as the depository bank, could have, and should have, carried out its duty by requiring the endorsement of each payee. By not doing so, it failed to protect itself against the risk of loss. See First Nat'l Bank of Arizona v. Plymouth-Home Nat'l Bank, 553 F. Supp. 448, 453 (D.Mass. 1982), aff'd 705 F.2d 439 (1st Cir.1983). The defense of N.J.S.A. 12A:4-406 (customer's failure to inspect), based on payment of a previous draft, also is not available to Rockbank because the defense was not properly presented to the motion judge. We also reject the assertion of a defense under N.J.S.A. 12A:3-406, as there clearly was no negligence on the part of Penn National related to the manner in which the draft was drawn.
We have not been shown any legitimate reason why we should, as urged by Hamilton, waive downstream collecting banks' presentment warranties in a draft transaction. The efficiency rationale *439 underlying the adoption of U.C.C. § 4-207 should be applied directly to drafts as used in modern commerce. Therefore, we are unable to find a basis to negate the clear warranties of N.J.S.A. 12A:4-207 as they pertain to Hamilton Bank. Providing the drawer-drawee with relief against its own "pay through" bank may in many circumstances make available a more convenient and expedient forum for redress than is available against the depository bank.[3] Hamilton, as a downstream collecting bank, clearly has recourse against Rockbank.
An intended payee, such as Mandelbaum, also may assert a claim against a depository-collecting bank for payment of an instrument with a missing or forged endorsement. See Knesz v. Central Jersey Bank & Trust Co., 97 N.J. 1, 477 A.2d 806 (1984); Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J. Super. 170, 174, 434 A.2d 618 (App.Div. 1981). Although N.J.S.A. 12A:3-419(3) provides a depository or collecting bank with a defense against a payee if the bank acts in good faith and in accordance with reasonable commercial standards, it is clear that payment by a depository bank of a draft with a missing endorsement is contrary to reasonable commercial practice. N.J.S.A. 12A:3-116(b); cf. Martin Glennon, Inc. v. First Fidelity Bank, 279 N.J. Super. 48, 57-58, 652 A.2d 199 (App.Div. 1995). Therefore, summary judgment was erroneously granted with respect to plaintiff's claim against Rockbank. It was plaintiff who was entitled to summary judgment against Rockbank.
As to plaintiff's claim against Hamilton Bank, the "pay through" bank, the motion judge granted Hamilton Bank's motion for summary judgment. Many issues may be raised as to whether Hamilton Bank, as the "pay through" bank, should be liable to plaintiff, the payee, either for conversion or as a third-party beneficiary of the guarantee extended to the drawer-drawee. Although an instrument is converted when paid with a missing *440 endorsement, N.J.S.A. 12A:3-419(1)(c); Humberto Decorators, Inc. v. Plaza Nat'l Bank, supra, 180 N.J. Super. at 174, 434 A.2d 618, it can be argued that Hamilton Bank, as the "pay through" bank, did not "pay" the draft. Clearly, it did not act to advise Rockbank until the draft was approved by Penn National. The comments to U.C.C. § 4-105 state:
2. The term payor bank includes a drawee bank and also a bank at which an item is payable if the item constitutes an order on the bank to pay, for it is then "payable by" the bank. If the "at" item is not an order in the particular state, (See Section 3-121) then the bank is not a payor, but will be a presenting or collecting bank.
3. Items are sometimes drawn or accepted "payable through" a particular bank. Under this Section and Section 3-120 the "payable through" bank (if it in fact handles the item) will be a collecting (and often a presenting) bank; it is not a "payor bank."
[U.C.C. § 4-105 cmt. 2 & 3.]
These comments must be considered in conjunction with N.J.S.A. 12A:3-120, which provides: "An instrument which states that it is "payable through" a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument."
Although there appears to be authority to the effect that each bank involved in the collection process is potentially liable to the payee, see, e.g., Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce, 764 F.2d 392, 396 (5th Cir.1985); White & Summers, Uniform Commercial Code § 15-8, at 771 (3d ed. 1988), we are satisfied that at least because of the absence of any suggestion of wrongdoing, Hamilton, the "pay through" bank is protected from liability under N.J.S.A. 12A:3-419(3), which provides that depository or collecting banks acting in good faith and in accordance with reasonable commercial practice are not liable for conversion. Messeroff v. Kantor, 261 So.2d 553, 555 (Fla. Dist. Ct. App. 1972).
Under N.J.S.A. 12A:4-207, as we have made clear, all transferees in the collection process automatically receive a guarantee of all previous endorsements. This we hold relieves transferees of the obligation to check prior endorsements. See U.S. Fidelity & Guar. Co., supra, 164 N.E.2d at 501 (drawee's failure *441 to observe the absence of the endorsement of one of the payees did not constitute negligence so as to preclude its recovery). We, therefore, conclude that it was commercially reasonable for Hamilton as the "pay through" bank to forward the draft to the insurance company for payment. Once the drawer-drawee had approved payment, Hamilton Bank was free to debit the insurance company's account and forward payment to the depository bank. As to Mandelbaum, summary judgment was properly granted to Hamilton Bank as there was no evidence that it failed to act in good faith and in accordance with reasonable commercial standards. N.J.S.A. 12A:3-419(3).
In conclusion, we affirm the judgment in favor of Mandelbaum against Penn National. We reverse the summary judgment in favor of Rockbank and against Mandelbaum and remand for entry of judgment in favor of Mandelbaum against Rockbank. We also reverse the summary judgment orders in favor of Rockbank and Hamilton Bank on Penn National's cross-claims against the two banks, and order the entry of judgment in favor of Penn National against the banks.
We affirm the summary judgment in favor of Hamilton Bank as to Mandelbaum's claim. We also reverse the summary judgment entered in favor of Rockbank with respect to Hamilton Bank's indemnity claim against it. We reserve to Hamilton the right to seek entry of a judgment for indemnification against Rockbank, in the event Hamilton makes payment to Penn National.
Affirmed in part, reversed in part.
NOTES
[1] Although the draft was payable "upon acceptance" this term does not indicate that there is a condition of payment, and therefore such a draft falls within the definition of "instrument." See, e.g., Lialios v. Home Ins. Cos., 87 Ill. App.3d 740, 43 Ill.Dec. 193, 194, 410 N.E.2d 193, 194 (1980); 55th and Ashland Currency Exchange v. City Mutual Ins. Co., 95 Ill. App.3d 759, 51 Ill.Dec. 366, 369, 420 N.E.2d 780, 783 (1981); Frickleton v. Fulton, 626 S.W.2d 402, 408 (Mo. App.Ct. 1981); Canal Ins. Co. v. First Nat'l Bank, 266 Ark. 1044, 596 S.W.2d 710, 713 (1979), aff'd o.b., 268 Ark. 356, 596 S.W.2d 709 (1980); Andrea G. Nadel, Provision in Draft or Note Directing Payment "On Acceptance" as Affecting Negotiability, 19 A.L.R. 4th 1268 (1983). See also Gast v. American Casualty Co., 99 N.J. Super. 538, 240 A.2d 682 (App.Div. 1968) (approving recovery under N.J.S.A. 12A:3-419(1)(c) on draft payable "upon acceptance" by drawer-drawee). N.J.S.A. 12A:3-120 also suggests that such a draft qualifies as a negotiable instrument. We note that were we to hold that such a draft is not a negotiable instrument, the ultimate outcome of this case would not be affected.
[2] N.J.S.A. 12A:4-105 defines collecting bank as "any bank handling the item for collection except the payor bank."
[3] § 4-207 also allows for direct suit against a remote prior collecting bank in order to avoid multiplicity of suits. U.C.C. § 4-207 cmt. 2.