## 35281. TRUST COMPANY BANK et al. v. ATLANTA IBM EMPLOYEES FEDERAL CREDIT UNION.

JORDAN, Justice.

We granted certiorari to review the Court of Appeals' decision in *Atlanta IBM Employees Federal Credit Union v. Trust Co. Bank,* 150 Ga. App. 253 (257 SE2d 346) (1979), wherein that court reversed the trial court's judgment in favor of the Trust Company and First National Bank. We reverse.

We will briefly set out the facts: The Credit Union (respondent/drawer) wrote a check for $5,000 on its account with the First National Bank (petitioner/drawee) payable to the order of an employee and a car dealer. The employee deposited the check in his own bank account at the Trust Company (petitioner/collecting bank) without the endorsement of the car dealer. Trust Company credited the employee's account, and First National debited the account of the Credit Union and returned the cancelled check to the Credit Union in its regular monthly statement. Approximately fourteen months later, the Credit Union discovered that the check in question had only been endorsed by one of the payees.

The Credit Union made demand for repayment on First National, which in turn, made demand upon the Trust Company. When both banks refused to reimburse the Credit Union, it brought suit. After a hearing, the trial court held that the check had been improperly paid by both banks because of the missing endorsement, but that the Credit Union had not notified the bank within a reasonable time and was precluded from bringing suit. The Court of Appeals reversed and held that the warranty provision contained in Code Ann. § 109A-4—207 (1) (§ 4-207 (1) of the UCC) and the language of § 4-207(4), providing that the claimant must notify the warrantor of the breach within a reasonable time, had been satisfied by

the Credit Union since it notified First National almost immediately after learning of the missing endorsement. The Court of Appeals held that it was "elementary" that all payees must have endorsed the check for it to have been properly payable, and that the Credit Union had no duty to inspect its returned checks for missing endorsements, concluding that since the Credit Union notified the bank as soon as it actually discovered that the car dealer had never endorsed the check, it had satisfied the applicable language of § 4-207.

In discussing the applicability of § 4-406, the Court of Appeals said "a bank customer has a duty [under this section] to discover and report an unauthorized signature or alteration and notify the bank promptly after such a discovery, but a customer is not required to check for missing endorsements. Phoenix Assurance Co. v. Davis, 126 N.J. Super 379 (314 A2d 615) (1974)." 150 Ga. App. at 254. The Court of Appeals thus held that, for the purposes of § 4-406, a missing endorsement is not an unauthorized signature, basing this on the Phoenix case since this is a question of first impression in Georgia. However, we read that case differently and hold that the better reasoning leads to a conclusion that a missing endorsement is equivalent to an unauthorized endorsement under UCC § 4-406.

At the outset, two aspects of this case should be specially noted: (1) This court agrees with the trial court and with the Court of Appeals that the banks were liable in the first instance for the wrongful payment of the checks under the warranties contained in § 4-207; and (2) the facts in this case are basically undisputed. Therefore, we are dealing only with the interpretation of § 4-406 (4) which provides as follows: "Without regard to care or lack of care of either customer or the bank . . . (b) a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report any alteration on the back of the item or any unauthorized indorsement is precluded from asserting against the bank such alteration or unauthorized indorsement."

The Official Comment to UCC § 4-406 explains the policy surrounding its adoption: "The . . . absolute time

limit on the discovery of forged indorsements should be ample, because in the great preponderance of cases the customer will learn of the forged indorsements within this time and if in any exceptional case he does not, the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks the customer may still have ... The forty existing statutes on the subject as well as Section 4-406 evidence a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items."

The theory behind this section, then, is not unakin to a statute of limitation. No one questions that Trust Company and First National should not have honored this check without the endorsement of a named payee. However, to rule that the statute limiting the bank's liability to a specified span of time does not apply because the words "unauthorized indorsement" could not include a missing endorsement presents too narrow a construction of the statute so as to circumvent the policy behind it.

There is a split of authority in other jurisdictions on this issue, a fact recognized by all parties involved. See Phoenix Assurance Co. v. Davis, 314 A2d 615, supra; Ford Motor Credit Co. v. United Services Automobile Assn., 11 UCC Rep. 361 (N.Y.C. Civ. Ct. 1972); but see Pine Bluff Nat. Bank v. Kesterson, 520 SW2d 253 (Ark. S.C. 1975). However, we believe that the language of subsection (4) of § 4-406 speaks for itself when it says "[w]ithout regard to care or lack of care of either customer or the bank ..." This language renders any breach immaterial and places a definite duration on the ability to proceed against the bank for its breach of duty. Particularly in the case of a missing endorsement, even a cursory glance at the back of of the check, by either the bank or the customer, would bring the mistake to light. Section 4-406 insures that the customer receiving a regular monthly bank statement will share the responsibility for safeguarding its interests with the bank.

As a final answer to whether the term "unauthor-

ized endorsement" would include a missing endorsement, the definition of an unauthorized endorsement is "one made without actual, implied or apparent authority *and includes a forgery.*" Code Ann. § 109A-1—201 (43). (Emphasis supplied.) This definition centers on the existence of authority, as well as requiring that the signature not be an outright forgery. Since a joint payee endorsing the check alone would not have the requisite amount of authority so that a bank paying a check over the sole endorsement of one joint payee would be liable for its wrongful payment (*Ins. Co. of N. A. v. Atlas Supply Co.*, 121 Ga. App. 1 (4) (179 SE2d 632) (1970)), that incomplete endorsement would amount to an unauthorized one. Accord, Pine Bluff Nat. Bank v. Kesterson, supra. As this court has said, "[p]ayment of the check without the endorsement of a joint payee is an exercise of dominion and control over the check inconsistent with the nonsigning payee's rights amounting to a conversion. [Cit.] *The situation is analogous to payment of the check on a forged endorsement,* which Code Ann. § 109A-3—419(1)(c) acknowledges to be a conversion. [Cit.]" *Trust Co. v. Refrigeration Supplies,* 241 Ga. 406, 408 (246 SE2d 282) (1978). (Emphasis supplied.) Extending this logic to the situation here, since the customer is required to examine its statement containing cancelled checks for forged, altered or unauthorized endorsements, then a customer could certainly shoulder the burden of discovering missing endorsements at the same time.

Regarding the Credit Union's separate claim against First National for breaching its duty as provided in UCC § 4-401, we agree with the trial court that the Credit Union's failure to promptly discover the bank's mistake bars it from an otherwise valid claim. See the above discussion.

*Judgment reversed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hill, J., who dissent.*

ARGUED SEPTEMBER 18, 1979 — DECIDED
FEBRUARY 20, 1980.

*King & Spalding, A. Felton Jenkins, Michael N. Mantegna,* for appellants.

*Muriel A. Masarek,* for appellee.