The FIRST NATIONAL BANK OF ST. PAUL

v.

TRUST COMPANY OF COBB COUNTY.

Civ. A. No. C80–487A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 10, 1981.

Robins, Davis & Lyons, Minneapolis, Minn., William H. Stanhope, Atlanta, Ga., for plaintiff.

Cochran, Camp, Snipes & Davis, Smyrna, Ga., for defendant.

## ORDER

TIDWELL, District Judge.

The above-styled action is presently before the court on the plaintiff's motion for summary judgment. The relevant facts of the case are as follows. Park Construction Company (Park) which is not a party to this action was a general contractor on a construction project in Sikeston, Missouri. AAA Railroad Construction Company, Inc. (AAA) which is also a non-party was one of the many subcontractors involved in the construction project. On December 4, 1978, Park drew three checks on the First National Bank of St. Paul ("First St. Paul") each of which was made to joint-payees. The checks are more fully described as follows:

| Check Number | Payees | Amount |
|---|---|---|
| 033387 | AAA Railroad Const. Co., Inc. and Jim Duty Trucking Co. | $ 6,704.65 |
| 033388 | AAA Railroad Const. Co., Inc. and Easterday Tie and Timber Co. | $15,840.00 |

| Check Number | Payees | Amount |
|---|---|---|
| 033390 | AAA Railroad Const. Co., Inc. and West Lake Quarry and Material Co. | $21,444.65 |

Park delivered the three checks to AAA at which time the description of the payees were intact. However, on December 11, 1978, AAA presented the three checks to Trust Company Bank of Cobb (Trust Co.) with the names of the other joint-payee besides AAA obliterated. With respect to each check, the only indorsement was made by AAA. The checks were presented to Trust Co. by Tony Rodriguez, a principal of AAA. Upon presentation, representatives of the Trust Co. questioned Mr. Rodriguez with regard to the alteration of the checks and the missing indorsement and were told by Mr. Rodriguez that the alteration was authorized by Park. Relying on Mr. Rodriguez's explanation, Trust Co. accepted the checks as indorsed by AAA.

At the time Mr. Rodriguez presented the checks, AAA was a customer of Trust Co. with a series of loans under account number 70–95–9, and two checking accounts numbered 01–35–22–8 and 01–40–48–3. As of December 11, 1978, AAA had overdrawn both of its two checking accounts in the amount of Thirty-One Thousand Eight Hundred Twenty-Nine and 44/100 Dollars ($31,829.44) in account 01–35–22–8 and Four and 97/100 Dollars ($4.97) in account 01–40–48–3. Upon presentment, Trust Co. credited the three checks to account 01–35–22–8 in the amount of Thirty-Eight Thousand Dollars ($38,000.00) and to account 01–40–48–3 in the amount of Five Thousand Nine Hundred Eighty-Nine and 30/100 Dollars ($5,989.30). Each credit was applied in part to compensate for the existing overdrafts in the respective accounts.

In addition to accepting and crediting the checks to AAA's accounts, Trust Co. stamped each check with the following language: "Pay any Bank P.E.G. Dec. 11, 1978 Trust Co. Bank of Cobb Co., Smyrna, Ga." The abbreviation "P.E.G." stands for the phrase "prior endorsement guaranteed." Having stamped the checks in this manner, Trust Co. sent the checks to First St. Paul

by U.S. mail with an attached collection form giving special instructions to "remit" and to call Park Construction Co. in the case of any questions.

On December 14, 1978, First St. Paul paid each of the three checks. On December 21, 1978, Park notified First St. Paul that each of the three checks had been materially altered by crossing out the name of a joint-payee without authority from Park and requested that St. Paul re-credit their account in the amount of Forty-Three Thousand Nine Hundred Eighty-Nine and 20/100 Dollars ($43,989.20). First St. Paul then credited Park's account and sought to recover its funds from Trust Co. It is First St. Paul's contention that on December 21 or 22, 1978 notice was given by telephone to Trust Co. that the three checks had been altered without Park's consent and were not properly payable because the joint-payee on each draft had not indorsed it. However, Trust Co. asserts that they have no knowledge or record of such a phone call. It is undisputed, though, that First St. Paul gave notice of its demand to Trust Co. in a letter received by Trust Co. on March 8, 1979. This letter was dated February 13, 1979 but was incorrectly addressed to Mr. William A. Burell, cashier and secretary of Cobb Bank & Trust Co., 1041 Cherokee Road, Smyrna, Georgia 30080. For the purposes of this motion, First St. Paul relies only upon the notice given by letter.

After Trust Co. refused to return the funds given by First St. Paul in exchange for the three checks, First St. Paul filed the present action. First St. Paul now contends that there is no genuine issue to be tried and that it is entitled to judgment as a matter of law.

First St. Paul bases its claim for recovery of funds given to Trust Co. in exchange for the checks on three grounds: (1) that Trust Co., as the collecting bank, breached its warranty of good title to First St. Paul, the payor bank, under *Ga.Code Ann.* § 109A–4–207(1)(a); (2) that Trust Co., as the collecting bank, breached its warranty against material alterations to First St. Paul, as the payor bank, under *Ga.Code Ann.* § 109A–4–

207(1)(c); and (3) that Trust Co. is liable to First St. Paul under common law for breach of its express indorsement warranty.

The plaintiff's claim for breach of the warranty of good title and the warranty against material alteration are both based on *Ga.Code Ann.* § 109A–4–207(1) and, thus, involve similar determinations of law. At the threshold, the court must determine the status of each bank in the chain of presentment as defined under *Ga.Code Ann.* § 109A–4–105. First St. Paul contends that the Trust Co. was acting in the capacity of a collecting bank in its handling of the three checks. In contrast, Trust Co. asserts that they were not acting as a collecting bank since they forwarded the checks to First St. Paul by U.S. mail rather than through the Federal Reserve Bank and attached a collection form containing special instructions.

Under *Ga.Code Ann.* § 109A–4–105, a "collecting bank" means any bank handling the item for collection except a payor bank. In the present case, Park was a customer of the Trust Co. and presented the checks to Trust Co. for deposit in its two accounts. By the admission of the defendant's own employee, Trust Co. accepted the checks, credited AAA's account and forwarded the checks to First St. Paul with a collection form attached. The court, therefore, concludes that Trust Co. performed more than the requisite acts necessary to qualify as handling the checks for collection. The fact that Trust Co. chose an unusual manner to transfer the checks in no way affects the court's conclusion that the checks were being handled by Trust Co. for collection. With respect to First St. Paul, it is clear that it stood in relationship to Trust Co. as the "payor bank" since the checks were drawn on First St. Paul. *Ga.Code Ann.* § 109A–4–105(b).

■ Under the *Uniform Commercial Code* § 109A–4–207, a collecting bank implicitly makes certain warranties to a payor bank which accepts or pays for an item. *Ga.Code Ann.* § 109A–4–207 details the types of warranties which arise and the requisites for claiming under them. In relevant part, the *Code* states as follows:

(1) Each customer or *collecting bank* who obtains payment or acceptance of an item and each prior customer and *collecting bank* warrants to the *payor bank* or other payor who in good faith pays and accepts the item that

(a) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has good title; and

.    .    .    .    .

(c) the item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith... (emphasis added)

The Georgia courts have recognized that a collecting bank breaches its warranty of good title when a check missing a necessary indorsement is presented to and accepted by a payor bank. *Insurance Co. of North America v. Atlas Supply Co.*, 121 Ga.App. 1, 172 S.E.2d 632 (1970). Furthermore, it is clear that the warranty against material alteration is breached by the obliteration of a joint-payee's name.

However, in the present case, Trust Co. maintains that First St. Paul may not rely on the warranty of "good title" and the warranty against "material alteration" since First St. Paul did not act in "good faith" in accepting the three checks. In support of this contention, Trust Co. points to the fact that the checks were materially altered on their face when received by First St. Paul, were forwarded by U.S. mail rather than through the Federal Reserve Bank and were accompanied by special instructions to call Park if there were any questions as to the checks. Relying on the material alteration of the checks and the abnormal method of transfer as providing notice to First St. Paul of the irregularities of each check, Trust Co. asserts that a question of fact exists as to whether First St. Paul accepted and paid the checks in "good faith" as required by *Ga.Code Ann.* § 109A–4–207.

Under *Ga.Code Ann.* § 109A–1–201(19), "good faith" is defined as "honesty in fact in the conduct or transaction concerned." As a rule, the determination of "good faith" is a question of fact requiring the consideration of all the circumstances attending a transaction. *Ginn v. Citizens & Southern National Bank*, 145 Ga.App. 175, 243 S.E.2d 528 (1978); *Hodges v. Youmans*, 129 Ga.App. 481, 200 S.E.2d 157 (1973). However, where the facts of the relevant event are clear and fully developed in the motion for summary judgment, it remains only for the court to determine the proper legal inference to be drawn from the facts. *First Bank of Savannah v. Kilpatrick-Smith Construction Co., Inc.*, 153 Ga.App. 112, 264 S.E.2d 576 (1980). In the present case, a review of the motion for summary judgment, the response, and replies indicate that the dispute as to "good faith" goes to the proper legal conclusion, not the underlying facts.

It is true that the obliteration of the co-payee's name was obvious on the face of the checks and that an unusual method for collection was employed by the Trust Co. to forward the checks. However, in light of the circumstances and the relative duties of each bank in the collection chain, the court concludes that First St. Paul did not lack "good faith" in accepting and honoring the checks. Under the *Uniform Commercial Code*, the burden of making sure that the indorsements are valid rests directly on the first bank in the collection chain since it is the first bank which has the best opportunity to verify the indorsements. This standard applies equally to the situation of missing indorsements as well as forged indorsements. *Federal Deposit Insurance Corporation v. Marine National Bank of Jacksonville*, 303 F.Supp. 401 (M.D.Fla.1969), *aff'd* 431 F.2d 341 (5th Cir. 1970).

At the time the three checks were presented to Trust Co. by AAA, representatives of the Trust Co. noted the alterations and requested an explanation from Tony Rodriguez, a principal of AAA who was presenting the checks. Mr. Rodriguez in-formed the representatives that the alterations were authorized by Park. Instead of fully investigating the validity of Mr. Rodriguez's statement as would have been commensurate with the duty of the first bank in the collection chain, Trust Co. accepted the checks without further inquiry.

In addition to accepting the checks on the word of Mr. Rodriguez, Trust Co. stamped each check with the words "pay any Bank P.E.G." which is commonly understood in the banking community to mean "prior endorsement guaranteed." Although Trust Co. vigorously contends that the stamp of "P.E.G." was only intended to guarantee the genuineness of AAA's indorsement and did not extend to the missing indorsement, Georgia case law prior to the *Uniform Commercial Code* has held that the use of the P.E.G. stamp serves to guarantee missing indorsements as well as indorsements on the check. *Roswell Bank v. Citizens & Southern DeKalb Bank*, 104 Ga.App. 291, 121 S.E.2d 706 (1961). This interpretation of the P.E.G. stamp would appear to be consistent with the law as provided under the *Uniform Commercial Code. See, Ga. Code Ann.* § 109A–1–103. Therefore, by stamping the checks "P.E.G.", Trust Co. expressly confirmed to First St. Paul that the Trust Co. had performed its duty of determining whether proper authority existed for cashing the checks.

Having stamped the checks "P.E.G.", the Trust Co. proceeded to transfer the checks to First St. Paul by attaching a collection form and using the U.S. mail rather than the Federal Reserve Bank. In support of its contention that First St. Paul lacked "good faith", Trust Co. places great emphasis on the unusual manner in which the checks were transferred and the note on the collection form which instructed the recipient to call Park Construction in case of any questions. However, the alleged precautions taken by Trust Co. were at best uncertain safeguards and provided a potential source of confusion for the recipient bank in view of the "P.E.G." stamp on the checks and the lack of any specific reference on the collection form to the missing indorsement.

Therefore, considering the Trust Co.'s duty as the collection bank to validate the indorsements and Trust Co.'s express warranty of genuineness conveyed by the "P.E.G." stamp, the court concludes that First St. Paul acted in "good faith" when accepting and paying for the three checks.

▪ In addition to Trust Co.'s defense of "good faith," Trust Co. contends that First St. Paul may not recover on its warranty of good title or its warranty against material alterations since First St. Paul failed to exercise "ordinary care" in handling the three checks. Although there is no precedent in Georgia as to the interrelationship between a bank's duty of ordinary care and its right to claim under the warranty provision of *Ga.Code Ann.* § 109A–4–207, other courts have held that the negligence of a drawee bank is not a bar to recovery on the statutory warranties provided by the *Uniform Commercial Code.* *Feldman Construction Co. v. Union Bank,* 28 Cal.App.3d 731, 104 Cal.Rptr. 912 (1972). This position being reasonable and consistent with the *Code,* the court concludes that Georgia courts would follow a similar course of reason. Accordingly, the court rejects the defendant's defense of "ordinary care" as irrelevant to the question of the plaintiff's right to recover under *Ga.Code Ann.* § 109A–4–207.

▪ Having concluded that First St. Paul acted in "good faith" and that Trust Co. breached its warranty of good title and warranty against material alterations, the court must determine whether First St. Paul complied with the requirement of *Ga. Code Ann.* § 109A–4–207(4) that a claim of breach of warranty be made within "a reasonable time after the person claiming learns of the breach." For the purposes of this summary judgment, First St. Paul relies only upon the notice letter which was received by Trust Co. on March 8, 1979. Furthermore, it is undisputed that First St. Paul initially learned of the breach on December 21, 1978.

When interpreting the *Uniform Commercial Code,* courts have consistently concluded that the determination of "reasonable time" is a question of fact depending upon the circumstances. *Clarkson v. Selected Risks Insurance Co.,* 170 N.J.Super. 373, 406 A.2d 494 (1979); *Phoenix Assurance Co. v. Davis,* 126 N.J.Super. 379, 314 A.2d 615 (1974). However, where the facts are undisputed, the court need only determine the proper legal inference to be drawn from the facts and a trial of the matter becomes unnecessary.

An examination of Georgia law provides little aid in determining what constitutes a "reasonable time" for giving notice to the collection bank. Although the Georgia Court of Appeals held in *Atlanta IBM Employees Federal Credit Union v. Trust Co. Bank,* 150 Ga.App. 253, 257 S.E.2d 346 (1979) that a lapse of fourteen months was unreasonable under *Ga.Code Ann.* § 109A–4–207(4), the decision was ultimately reversed by the Georgia Supreme Court on other grounds without specifically addressing the Appeals Court's determination of unreasonable delay, 245 Ga. 262, 264 S.E.2d 202 (1980). In the absence of precedent in the forum state, "it becomes the duty of this court to arrive at the decision which reason dictates, with the faith that the state courts will arrive at the same decision." *Insurance Co. of North America v. English,* 395 F.2d 854, 860 (5th Cir. 1968).

Looking to other jurisdictions for guidance, the court finds that other states have considered a lapse of two months between the time of the breach and the notice to the bank to constitute an unreasonable delay. *Clarkson v. Selected Risks Insurance Co. v. Newton Trust Co.,* 170 N.J.Super. 373 (1979), 406 A.2d 494 (1979) (passage of two months is unreasonable). *Phoenix Assurance Co. v. Davis,* 126 N.J.Super. 379, 314 A.2d 615 (1974) (passage of ten weeks is unreasonable; two weeks would be reasonable). Considering only First St. Paul's attempt to provide notice by letter, it appears that First St. Paul waited fifty-four days before issuing the notice of the breach to Trust Co. In addition, the letter was improperly addressed to Mr. William A. Burell, cashier and secretary of Cobb Bank & Trust Co., 1041 Cherokee Road, Smyrna,

Georgia 30080, causing further delay. The final result of the improper address was that the defendant Trust Company Bank of Cobb County did not receive the notice until March 8, 1979 bringing the total period of time between learning of the breach and actually notifying the collecting bank of the breach to 77 days or 11 weeks. In light of precedent in other jurisdictions, the court concludes that First St. Paul failed to give notice of the breach within a "reasonable time" as provided under *Ga.Code Ann.* § 109A–4–207(4).

As a second line position in support of its motion for summary judgment, First St. Paul contends that even should the court find that notice was not timely, the recovery should still be awarded to First St. Paul as a matter of law since Trust Co. was not injured by the delay. Under *Ga.Code Ann.* § 109A–4–207(4), a liable party is discharged by the claimant's failure to give notice within a reasonable time "to the extent of any loss caused by the delay in making claim." In the present case, First St. Paul contends that its delay in giving notice to Trust Co. of Cobb was not a causal factor in any loss suffered by Trust Co. Reviewing the events of December of 1978 as presented in the record, it appears that the majority of the funds given in exchange by First St. Paul for the checks were immediately applied by Trust Co. to existing overdrafts of Thirty-One Thousand Eight Hundred Twenty-Nine and 44/100 Dollars ($31,829.44) in account 01–35–22–8 and Four and 97/100 Dollars ($4.97) in account 01–40–48–3. Therefore, at least to the extent of the total overdrafts amounting to Thirty-One Thousand Eight Hundred Thirty-Four and 41/100 ($31,834.41), the Trust Co. suffered no injury by the delay since the funds remained in the bank's control and the return of the overdraft amount would simply place Trust Co. in a position of status quo with its debtor AAA as it existed on December 11, 1980.

However, in addition to the amount retained by Trust Co. to cover the overdrafts, the crediting of the three checks to AAA's accounts created available funds in the amount of Six Thousand One Hundred Seventy and 56/100 Dollars ($6,170.56) in 01–35–22–8 and Five Thousand Nine Hundred Eighty-Four and 43/100 Dollars ($5,984.43) in 01–40–48–3. Consequently, the court must determine whether a timely notice by First St. Paul would have provided Trust Co. with an opportunity to prevent the loss of these funds made available for withdrawal. A review of the record indicates that on December 31, 1978 AAA's account number 01–35–22–8 had a deficit balance of One Thousand Seventeen and 22/100 Dollars ($1,017.22) and that account number 01–40–48–3 had been reduced to the amount of Seventy-Five and 85/100 Dollars ($75.85). On December 31, 1978, ten days had passed since First St. Paul had first learned of the breach. Considering the circumstances of the present case and relying on available case law for guidance, the court concludes that the elapse of ten days between the learning of the breach and the giving of notice to Trust Co. would have been well within the boundaries of reasonable notice required by *Ga.Code Ann.* § 109A–4–207(4). Since the combined withdrawal of the two accounts up to December 31, 1978 exceeded the amount of Twelve Thousand One Hundred Fifty-Four and 89/100 Dollars ($12,154.89) made available for withdrawal by Trust Co. to AAA, the court concludes that First St. Paul's delay in giving notice had no effect on any loss Trust Co. may claim. Accordingly, the court grants the plaintiff's motion for summary judgment in the full amount of Forty-Three Thousand Nine Hundred Eighty-Nine and 30/100 Dollars ($43,989.30). Having granted the plaintiff's motion for summary judgment on the basis of the statutory warranties of *Ga.Code Ann.* § 109A–4–207(1), the court finds it unnecessary to address the merit of the plaintiff's common law claim for breach of an express indorsement warranty.

## SUMMARY

The court grants the plaintiff's motion for summary judgment on the basis of the defendant's breach of its warranty of good title and its warranty against material alterations.

SO ORDERED.