## A92A1760. DECATUR FEDERAL SAVINGS & LOAN ASSOCIATION v. LITSKY.
(429 SE2d 300)

BEASLEY, Judge.

We granted Decatur Federal's application for interlocutory appeal to review the trial court's denial of its motions for complete and partial summary judgment. Litsky sued the bank to recoup his losses as a result of the bank's payment of checks forged on Litsky's account. The application of OCGA § 11-4-406 is central.

*Facts*

In 1985, Litsky, who lived in New York, opened a checking account with Decatur Federal. He executed a signature card bearing only his name. The bank sent monthly bank statements to him at his New York address until 1987, when he moved to Georgia, and instructed the bank to mail the statements to him at his new address.

From January to September 1990, Litsky's housekeeper forged a number of checks on his account. He discovered this on September 19, when she was killed. He immediately went, the same day, to the bank and filled out an affidavit identifying a number of forged checks which had been paid.

Litsky testified that he does not balance his checkbook, write checks in numerical order, or keep a ledger of checks he has written. It is his practice to review his account statements to ensure that he has enough money in the bank to cover his checks. He then looks at the signatures on the front and back of the checks. After doing that, he discards the statement.

He testified that he had destroyed the account statements received by him for the pertinent months, except July, which statement he took to the bank when he reported the forgeries. This statement does not correspond with the photostatic copy of the July statement sent to Litsky by the bank; among other things it showed a much smaller balance than was his actual ending balance at that time.

Litsky's position is that the statements sent to him by the bank were intercepted by his housekeeper, that those statements which he ultimately received were spurious documents constructed by her, and that the forged checks were not with the statements received by him.

The bank submitted evidence that its depositors' checks are routinely processed and paid by automated system or computer and signatures are not generally examined or verified by bank employees. If

items are presented for payment in person at one of the branches, bank employees have the discretion to verify the signature if the situation warrants it. They can do this easily by "faxing" a copy of the customer's signature card.

The bank states that it mailed monthly statements to Litsky for January through September, as evidenced by the affidavit of an employee that customers' monthly account statements are generated by computer and are mailed to customers at the last address provided by them. If a statement is returned, a return code is entered on the computer. If a customer requests that the statements be held, a separate code is entered. Neither such code appeared on Litsky's record. His statements were generated by the computer on the third day of each month and mailed to him by automated process within three business days thereafter.

1. The bank invokes the time limitations for customer assertions of payment on unauthorized signature or indorsement or alteration, which is provided by OCGA § 11-4-406 (4).

"(4) Without regard to care or lack of care of either the customer or the bank:

"(a) A customer who does not within 60 days from the time the statement and items are made available to the customer (subsection (1) of this Code section) discover and report his unauthorized signature or any alteration on the face of the item is precluded from asserting against the bank such unauthorized signature or alteration; and

"(b) A customer who does not within one year from the time the statement and items are made available to the customer (subsection (1) of this Code section) discover and report any alteration on the back of the item or any unauthorized indorsement is precluded from asserting against the bank such alteration or unauthorized indorsement."

"The theory behind this section . . . is not unakin to a statute of limitation." *Trust Co. Bank v. Atlanta IBM &c. Union,* 245 Ga. 262, 264 (264 SE2d 202) (1980). It places absolute time limits on Litsky's claim, without regard to any allegations that Decatur Federal negligently paid the forged checks. Id.

In order to claim the benefit of the time limits, Decatur Federal must demonstrate that it complied with the requirement in subsections (a) and (b) that "the statement and items are made available to the customer" as contemplated in OCGA § 11-4-406 (1), which provides that the bank's obligation is fulfilled if it: "sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer. . . ."

There is unrefuted evidence that the bank sent monthly statements to the customer at the correct address pursuant to his instruction. Its sending, not the customer's receiving, is what governs because this is the plain word used in the statute. Such a construction has been given in *Mesnick v. Hempstead Bank*, 434 NYS2d 579, 580 (1) (S.Ct. 1980) and *Cooley v. First Nat. Bank of Little Rock*, 635 SW2d 250, 252 (1) (Ark. 1982). The meaning of "send" is explained in OCGA § 11-1-201 (38).

The record also establishes that the cancelled checks, or "items," were also mailed by Decatur Federal to Litsky. The uncontroverted deposition testimony of Decatur Federal's security officer was that the statements were mailed to Litsky accompanied by the original checks.

Although the record provides a list of the checks showing the payee on each, the forged checks themselves are not in the record, so it is not possible to ascertain exactly how or if the checks were indorsed. The list of checks identified by Litsky as containing his forged signature reflected payees such as Southern Bell, Georgia Power, and the IRS, along with over 20 checks payable to Charles Jackson, who may or may not have been a fictitious person. Under these circumstances, Litsky's employee's indorsement in the name of the named payee would be effective under OCGA § 11-3-405 (b). See *Northbrook Property &c. Ins. Co. v. C. & S. Nat. Bank*, 184 Ga. App. 326, 327 (361 SE2d 531) (1987); *Perini Corp. v. First Nat. Bank of Habersham County*, 553 F2d 398, 409 (2) (5th Cir. 1977); see also *First Nat. Bank of Gwinnett v. Barrett*, 141 Ga. App. 161 (233 SE2d 24) (1977) (holding that where the intended payee cashes a check but fails to indorse it, payment by the collecting and drawee banks is still proper, although the check cannot be negotiated). " 'The purpose of § 3-405 is to promote negotiability and foster the commercial reliability of paper. The rationale of UCC § 3-405 is that the employer-drawer should bear the loss caused by his dishonest employee rather than thrusting it upon the drawee bank.' " Id., citing Anderson, Uniform Commercial Code, p. 163, § 3-405.3.

Where a missing or defective indorsement is on a check which also contains a forgery of the drawer's name on its face, "[t]he ostensible drawer's loss in such a situation can generally, as here, be related to the defective indorsement in only the most speculative fashion. No sound basis exists for extending liability for handling the indorsement beyond the unlikely event of a claim [by the named payee] of superior right to payment under the instrument." *Perini Corp. v. First Nat. Bank*, supra at 414 (2). Litsky's claim against Decatur Federal is not predicated upon the status of any payee's indorsement, but rather upon a claim for payments made on the basis of his forged signature. See *Winkie, Inc. v. Heritage Bank of Whitefish Bay*, 299 NW2d 829, 836-837 (Wis. 1981); *Brighton, Inc. v. Colo-*

*nial First Nat. Bank*, 422 A2d 433, 440 (N.J. Super. 1980).

The rationale for allowing the drawer more time to report an unauthorized indorsement than his unauthorized signature is that "there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature. However, he does not know the signatures of indorsers and may be delayed in learning that indorsements are forged." Anderson, Uniform Commercial Code, p. 193, § 4-406:1. Where both are present, the customer should discover and report the unauthorized payment within the shorter time period.

For the foregoing reasons, *Bank of Thomas County v. Dekle*, 119 Ga. App. 753 (168 SE2d 834) (1969), is overruled to the extent that it is inconsistent with our holdings.

Consequently, Litsky's unauthorized payment claim against Decatur Federal is limited to those checks on which he discovered and reported his forged signature within the 60-day limit of OCGA § 11-4-406 (4) (a).

The bank's argument that Litsky is barred from complaining of forged indorsements on the back of the checks because they were not delivered to him and he is therefore not a holder is patently without merit. Litsky is seeking to enforce his rights as a depositor and not as a holder. Cf. *First Nat. Bank of Gwinnett v. Barrett*, supra.

2. Appellee challenges the constitutionality of OCGA § 11-4-406 but he cannot do so. In the first place, although he raised the issue below in his brief in opposition to the bank's motion for summary judgment, and the trial court took note of it in its order, the issue was not ruled on. There is no ruling to review on appeal. *Alexander v. State*, 239 Ga. 810 (239 SE2d 18) (1977); *Trust Co. of Ga. v. Montgomery*, 234 Ga. 187 (215 SE2d 8) (1975). In the second place, appellee did not file a cross-appeal, which he would have to do in order to challenge such a ruling. *Chester v. Ga. Mut. Ins. Co.*, 165 Ga. App. 783, 784 (1) (302 SE2d 594) (1983). Thus, constitutionality is not before the appellate court and transfer to the Supreme Court under 1983 Ga. Const., Art. VI, Sec. VI, Par. II (1) need not be considered.

*Judgment affirmed in part and reversed in part. Pope, C. J., McMurray, P. J., Birdsong, P. J., Cooper, Andrews, Johnson and Blackburn, JJ., concur. Carley, P. J., disqualified.*

DECIDED MARCH 11, 1993.

*McCurdy & Candler, Dana B. Miles, Michael C. McGoff*, for appellant.
*Bruce D. Duncan*, for appellee.