## A97A1446. TRAVELERS INDEMNITY COMPANY v. TRUST COMPANY BANK et al.

(495 SE2d 296)

POPE, Presiding Judge.

Plaintiff Travelers Indemnity Company ("Travelers") brought this suit against Trust Company Bank and Jeffrey Berman, an attorney, to recover amounts Travelers had to pay when a guardian to whom it issued a surety bond mismanaged her ward's assets. The trial court granted summary judgment to Berman and Trust Company. We affirm the trial court's judgment but must disapprove of certain language in *First Nat. Bank of Chattooga County v. Rapides Bank &c. Co.*, 145 Ga. App. 514, 517 (2) (244 SE2d 51) (1978).

In early 1988, Sandra Rice petitioned the probate court to become guardian of her niece, a minor who had received thousands of dollars in assets. Berman stated he believed the probate court appointed him the child's guardian ad litem during those proceedings, although court records indicate another person served in that capacity. The probate court granted Rice's petition on April 12, and on May 11 she opened checking account number 8840221264 at Trust Company under the name of "Sandra L. Rice and Jeffrey N. Berman as guardian for [the child]."

As a condition of issuing the bond, Travelers required Rice to sign and present Trust Company with a "cash countersignature notice" governing her ability to reach assets held in the account. The agreement, signed by Rice and a Trust Company officer, gave the bank notice of Rice's guardianship and stated, "by agreement with [Travelers], Surety on my [guardianship] bond . . . all checks, drafts, withdrawal slips, receipts or other orders against the funds in your Bank in my name as, or under my control as, [guardian], . . . are to be countersigned by [Travelers] and no checks, drafts, . . . or other orders against such funds are to be honored, except when signed by me as [guardian], and countersigned by an authorized representative of [Travelers], duly designated to you by [Travelers]." On the notice form, below this signed agreement, was this statement: "We hereby confirm the above Joint Control arrangement, and designate, until further notice from us, any one of the following persons as authorized to represent us for the above purpose. . . . THE TRAVELERS INDEMNITY COMPANY." In the space provided for "Specimen Signatures," Berman and a Travelers' employee signed. Berman also signed the account signature card, although he did not assist Rice in applying for the checking account.

From May until the account was closed in November 1988, Rice wrote thousands of dollars in checks without obtaining the signature of Berman or any other person authorized by Travelers to co-sign the checks. In violation of the "cash countersignature" or "joint control"

agreement, Trust Company paid these drafts. During these months, Trust Company regularly sent statements to Rice's address, which was the "account address" listed on the account application. Neither Berman nor Travelers ever requested monthly statements or copies of cancelled checks. Not until September 1992 was Trust Company notified of the improper disbursements. Berman testified he had no contact with Rice after the spring of 1988 and did not receive any statements or monitor the account, although he did receive one $100 check written on the account in payment of his fee for helping arrange the bond.

In October 1992, the probate court found Rice had mismanaged the funds and called upon Travelers to make good the wasted assets. Travelers then brought this suit, claiming that (1) Trust Company had violated the "cash countersignature" agreement by honoring checks bearing only Rice's signature and (2) Berman had violated a "fiduciary duty" to Travelers, "negligently failed to exercise joint control over the funds . . . and failed to diligently preserve the rights of Travelers." As the trial court did not specify the grounds of its ruling in favor of Trust Company and Berman, we will examine as necessary each claim and defense raised by the parties to determine whether the trial court's ruling is "right for any reason." See *State Farm &c. Ins. Co. v. American &c. Ins. Co.*, 224 Ga. App. 789, 794 (4) (b) (482 SE2d 714) (1997).

1. Based on the 1908 Supreme Court of Georgia case of *Fidelity &c. Co. v. Butler*, 130 Ga. 225 (1) (60 SE 851) (1908), both Berman and Trust Company argue the "cash countersignature" or "joint control" agreement violates public policy. In that case, the court declared that agreements such as the one at hand violate public policy because, in dictating the method by which the guardian can hold and use the ward's funds, the surety improperly assumes custody and control of the ward's assets when no court has granted it the powers of guardianship. Id. In 1960, however, the legislature passed what is now OCGA § 33-24-49. See Ga. L. 1960, p. 289, § 1 at p. 673. That statute specifically provides that it "shall be lawful" for a surety on a guardianship bond to require the bondholder to enter an agreement that "prevent[s] the withdrawal of the moneys or assets . . . without the written consent of the surety . . . or an order of the court."

Berman's arguments that this statute does not invalidate the court's ruling in *Butler* are patently meritless. No "separation of powers" problem is presented; rather, the *Butler* decision itself states that establishing the validity of such agreements "is rather for the legislature than for the judicial department of the government." Id. at 243. We cannot find such agreements unenforceable as against public policy when the legislature has specifically declared them "lawful." "What the Legislature allows cannot be contrary to public

policy. [Cit.]" *NEC Technologies v. Nelson*, 267 Ga. 390, 394 (3) (478 SE2d 769) (1996).

The parties have directed our attention to *First Nat. Bank of Chattooga County v. Rapides Bank &c. Co.*, supra, a case citing with approval *Butler*'s holding that "joint control" agreements violate public policy. To the extent *Rapides Bank* improperly relied on case law superseded by OCGA § 33-24-49, we overrule it.

2. We may, however, affirm the trial court's grant of summary judgment to Trust Company based on the bank's argument, advanced in both the trial court and this Court, that Travelers' claims are barred by the time limits of OCGA § 11-4-406. The first and fourth subsections of that statute[1] provide that if a bank sends its "customer" an account statement "accompanied by items paid in good faith in support of the debit entries" or "otherwise in a reasonable manner made the statement and items available to the customer," and the customer "does not within 60 days from the time the statement and items are made available . . . discover and report his [or her] unauthorized signature or any alteration on the face of the item," the customer "is precluded from asserting against the bank such unauthorized signature or alteration."

Here, the evidence is uncontroverted that Trust Company sent statements to the "account address" during each month this account was open. Although review of those statements and the canceled checks they contained would have revealed items paid with only one of the two required signatures, the bank was not informed of the improper payments until September 1992. Interpreting OCGA § 11-4-406 (4), the Supreme Court has held an "unauthorized" *endorsement* to include a "missing" endorsement. See *Trust Co. Bank v. Atlanta IBM &c. Credit Union*, 245 Ga. 262, 264-265 (264 SE2d 202) (1980). Although no Georgia court has specifically determined whether a missing *signature* constitutes an unauthorized signature within the meaning of this statute, this is the rule in a majority of jurisdictions. See generally *Knight Communications v. Boatmen's Nat. Bank*, 805 SW2d 199, 201-202 (Mo. App. 1991) (cataloging the applicable rule in each state that has decided this issue). As the majority view is in accord with *Trust Co.*'s definition of "unauthorized," we are persuaded that the checks containing only one of two required signatures were "unauthorized" checks subject to OCGA § 11-4-406 (4) (a).

The central question, then, is whether the statute applies to Travelers, which claims its "joint control agreement" with Trust

---

[1] Formerly codified as OCGA § 11-4-406 (1) and (4), the subsections were redesignated as 11-4-406 (a) and (d) in 1996.

Company is an independent contract not subject to the time limitations of OCGA § 11-4-406. We have found only one case addressing this issue: *American Ins. Co. v. Fidelity Bank &c.*, 583 A2d 361 (N.J. App. 1990). In that case, a surety on a guardianship account required the guardian to sign a joint control agreement, to which the guardian's bank also agreed. As in the present case, nothing in the joint control agreement directed the bank to send the surety account statements or monitor the account on the surety's behalf. The guardian, to whom the bank did send regular statements, wrote many checks containing only her signature. The bank honored them in violation of the joint control agreement. The court held that the surety was a "customer" by virtue of the joint control agreement, that its relationship with the bank was governed by § 4-406 of the Uniform Commercial Code, and that the surety could not use the joint control agreement to "elevate its status above that of a 'customer.' " Id. at 363. Because the bank sent regular statements to the only person to whom it had been directed to send statements — the guardian — the surety's untimely failure to request statements or notify the bank of improperly honored checks barred its claims. Id. at 605. Its decision, the court held, would further the policy of the statute by placing on the surety the burden of monitoring the account. Id.

We find the *Fidelity Bank* case and its reasoning persuasive. OCGA § 11-4-406 (4) is clearly intended to relieve the bank of responsibility for unauthorized checks after the customer has had a specified time period to review statements for errors. See *Trust Co. Bank*, 245 Ga. at 265; *Nat. Bank of Ga. v. Weiner*, 180 Ga. App. 61, 64 (348 SE2d 492) (1986). Travelers could easily have requested that Trust Company send it monthly statements or could have asked Rice to provide it with those statements. The surety apparently did not request any statements during the almost four years after the account was closed, and it must bear the burden of loss for its failure.

3. Berman was also entitled to summary judgment on Travelers' claims that he owed the surety a "fiduciary duty" to monitor the account. Even construing the evidence strongly in Travelers' favor, the only agreement Berman made with the company was to serve as an authorized co-signer of checks. An agent is required to act with the scope of authority granted, as "reasonably interpreted." OCGA § 10-6-21. No reasonable interpretation of the joint control agreement supports Travelers' contention that Berman was required actively to monitor the account, supervise Rice, or manage the ward's affairs. See *Heard v. Decatur Fed. S. & L. Assn.*, 157 Ga. App. 130, 135 (5) (276 SE2d 253) (1980). Travelers has presented no evidence showing Berman agreed to do anything other than serve as the company's authorized signatory on checks. Therefore, regardless of whether Travelers hoped or expected Berman would actively monitor

the account, its contention that Berman had a fiduciary duty to monitor is without merit. See *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 125-126 (2) (a) (483 SE2d 135) (1997). The trial court properly found no question of material fact on this issue and granted summary judgment to Berman. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Travelers claims that by failing to monitor the checking account, Berman violated duties he owed to the minor child as her guardian ad litem. Travelers further claims it is subrogated to the minor's rights and may assert her claims against Berman. We find no evidence to support this theory. Although Berman stated he was appointed "guardian ad litem" for the minor during the pendency of Rice's guardianship petition, the probate court's records indicate another person served in that capacity. Even if Berman did serve as guardian ad litem for the purpose of setting up the guardianship, Berman testified without contradiction that he no longer occupied that fiduciary position when the account was opened in May. By that time, Rice had been designated the guardian of her niece's estate. To the extent Travelers argues Berman violated his professional duties as an attorney to the minor, it raised no such claim in its complaint, and did not attach the malpractice affidavit required by OCGA § 9-11-9.1. Under these circumstances, Travelers' claims against Berman based on its "subrogation" to the minor's rights must fail.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Beasley, Blackburn, Smith, Ruffin, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur. Birdsong, P. J., disqualified.*

DECIDED OCTOBER 22, 1997.

*Howard, Clark & Mercer, Glen W. Clark, Jr., James L. Palmer,* for appellant.

*Cashin, Morton & Mullins, James M. Sherman,* for appellees.