A98A0108. SUMMIT TRANSPORTATION SERVICES, INC. et al.
v. NATIONSBANK (SOUTH), N.A.
(500 SE2d 911)

Judge Harold R. Banke.

Summit Transportation Services, Inc. ("Summit") and Commercial Union Insurance Company, its insurer, sued NationsBank for

breach of contract, negligence, and conversion in an effort to recover for checks forged by Summit's bookkeeper, Carole Hamrick Brewer. Enumerating three errors, Summit and its insurer appeal the award of summary judgment to NationsBank.

Summit opened a commercial checking account with The Chattahoochee Bank ("Chattahoochee") in 1991. BankSouth acquired this bank in May 1994 and NationsBank acquired BankSouth in July 1996. Summit had only two authorized signatories on its commercial account, that of the company president, Brenda Elwell, and the vice-president, Darryl Bishop. Between September 1992 and May 1994, Brewer, Summit's bookkeeper, forged the signature of Elwell on 349 checks. Brewer pleaded guilty to criminal charges relating to these forgeries.

When Summit initially opened its account, Chattahoochee sent the original canceled checks with the monthly bank statements. Sometime in the fall of 1992, Chattahoochee began sending its customers reduced sized copies or "imaged checks" which appear six to a page instead of the original checks. For the first three months, Chattahoochee sent both the imaged checks and the originals. Thereafter, Chattahoochee sent only imaged copies of the checks processed. On May 5, 1994, Elwell opened the first statement supplied by Bank-South after it acquired Chattahoochee. This statement contained the original canceled checks, and Elwell noticed several checks payable to Brewer on which her own name had been forged. Elwell contacted BankSouth and reported the forgeries. Eventually, Elwell unearthed several hundred forgeries totaling more than $156,000.

Commercial Union paid out the policy limit of $100,000 for Summit's insurance claim, leaving about $56,000 as an uninsured loss. Summit settled with Brewer for $22,000. Summit and Commercial Union then sought $134,445.54, plus interest from NationsBank. Summit challenges the trial court's finding that all of its claims are barred by the provisions of OCGA § 11-4-406. *Held*:

1. Summit contends that the trial court erred in holding as a matter of law that NationsBank made the "items paid" available as required by OCGA § 11-4-406 (1).[1] A bank may charge its depositors only for those items which are properly payable. OCGA § 11-4-401 (1). In general, a bank may not charge an account for a forged check, and is strictly liable for paying on a forged check. *Trammell v. Farmers &c. Bank of Summerville*, 170 Ga. App. 347, 348 (1) (317 SE2d 323) (1984). However, the Uniform Commercial Code provides certain exceptions and limitations to a bank's liability. See OCGA § 11-4-406.

---

[1] It is undisputed that the pre-July 1, 1996 version of OCGA § 11-4-406 governs the underlying action.

Summit argues that because Chattahoochee failed to strictly comply with OCGA § 11-4-406 (1), NationsBank remains liable for improper payment of the forged checks. We disagree. Under this statute, a bank may fulfill its responsibility to its customers: (1) by sending a statement of account accompanied by items paid in good faith in support of the debit entries, or (2) by holding the statement and items pursuant to a request or instructions of its customer, or (3) in a reasonable manner making the statement and items available to its customer. OCGA § 11-4-406 (1). The evidence is unrefuted that both Chattahoochee and BankSouth sent monthly statements to Summit at its correct address. Although Chattahoochee initially sent the actual canceled checks, it switched to sending only imaged copies after January 1993. Elwell testified that she knew that the bank had changed its procedure and Summit offered no evidence that it posed any formal objection to Chattahoochee. Moreover, Elwell admitted that she could request and did request copies of canceled checks from Chattahoochee whenever she needed them. Even assuming arguendo, that the statute required that Chattahoochee send the original checks and not imaged copies, the evidence shows that Chattahoochee "made the items available to its customer" and thereby complied with the third method. Consequently, Summit's unauthorized payment claim against NationsBank is limited to those forged checks which Summit discovered and reported within the 60-day limit of OCGA § 11-4-406 (4) (a). *Decatur Fed. &c. Assn. v. Litsky*, 207 Ga. App. 752, 755 (1) (429 SE2d 300) (1993). See *Eason Publications v. NationsBank*, 217 Ga. App. 726, 728-729 (1) (458 SE2d 899) (1995).

2. The trial court erred in holding that Summit's alleged negligence is relevant under OCGA § 11-4-406 (2). As a matter of law, a bank cannot insulate itself from liability if its "customer establishes lack of ordinary care on the part of the bank in paying the item(s)." OCGA § 11-4-406 (3). Thus, Summit's claim would not be precluded if the evidence showed that Chattahoochee had been negligent in honoring the forged checks.

It is undisputed that NationsBank was unable to produce any document which stated or explained Chattahoochee's policies as to verifying signatures on checks. Nor was NationsBank able to produce the signature cards or Chattahoochee's depository agreement with Summit. Similarly, NationsBank was unable to offer any witness to explain Chattahoochee's verification procedures. Chattahoochee's vice-president testified that a check had to meet a dollar amount threshold before the bank would verify the signature on a check but she could not recall that amount.

Here, as in *Eason Publications*, 217 Ga. App. at 729, NationsBank failed to conclusively show that the bank complied with industry standards and exercised the requisite degree of ordinary care in

processing Summit's checks. Inasmuch as NationsBank failed to show what signature verification procedures were used in the 60-day period at issue before Summit reported the forgeries, it cannot be determined whether these procedures were consistent with general industry practice. See id. NationsBank's dearth of evidence as to the applicable policies and procedures could not and did not shift the evidentiary burden on summary judgment to Summit. See *Eason Publications*, 217 Ga. App. at 729 (1) ("Even if the bank showed conclusively that it complied with local industry standards, making a prima facie showing simply shifts the burden to . . . [the customer] to produce rebuttal evidence that the bank did not exercise ordinary care."). Accordingly, a jury must decide whether Chattahoochee's verification procedures constituted ordinary care.

3. Summit contends that the 14-day rule does not apply because a fact question exists as to the bank's negligence. Again, we agree. The same exception in favor of a bank customer's rights applies to the 14-day rule. OCGA § 11-4-406 (3). Inasmuch as it cannot be said as a matter of law that Chattahoochee was not negligent in paying the forged checks, summary judgment must be reversed on this issue also.

*Judgment affirmed in part and reversed in part. Beasley and Ruffin, JJ., concur.*

DECIDED APRIL 2, 1998 — 

*Mozley, Finlayson & Loggins, Charles D. Hailey, Richard D. Hall*, for appellants.

*Parker, Hudson, Rainer & Dobbs, G. Wayne Hillis, Jr., Nancy H. Baughan*, for appellee.