SpanCom Services, Inc., sued SouthTrust Bank, N.A., and Compass Bank, alleging that the banks had improperly paid almost $300,000 in checks drawn on *Page 932 
SpanCom's commercial account at Compass. The banks moved for a summary judgment, contending that SpanCom's claims were barred by § 7-4-406(f), Ala. Code 1975, which requires a bank customer to notify the bank of an unauthorized endorsement, and to do so within a specific time, or else be precluded from bringing an action against the bank based on the unauthorized endorsement. The trial court entered a summary judgment in favor of the banks. SpanCom appealed to the Alabama Supreme Court, which deflected the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala. 1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party's favor. Id.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975. See Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). To defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). The facts in this case are undisputed; therefore, we review the case only to see whether the banks were entitled to a judgment as a matter of law.
The record indicates the following: SpanCom had a business checking account with Compass. SpanCom did not have an account with SouthTrust; however, James Michael Glodt, SpanCom's in-house bookkeeper and accountant, had his personal checking account there. Glodt handled SpanCom's bills and reconciled its checking account with the monthly statements provided by Compass. The business's canceled checks were included with the statements. No one at SpanCom supervised Glodt, and the business had no mechanism in place to provide checks and balances in its accounting system.
In March 1997, Glodt left SpanCom, and Jason L. McCarty, an outside accountant, was hired to replace him. McCarty reviewed SpanCom's account and discovered that Glodt had written unauthorized checks on SpanCom's account and that some authorized checks that had been made payable to one of the business's vendors had never been received by the vendor. McCarty also discovered that some of the cleared checks were missing. According to SpanCom, those missing checks had been made payable to one of its vendors but were deposited into Glodt's personal checking account at SouthTrust. One of the vendor's employees told McCarty that it had neither received nor negotiated the checks. According to the record, from November 1, 1991, through December 12, 1996, 98 checks had cleared SpanCom's account at Compass. The checks, which had not been endorsed, were deposited at SouthTrust.
In the spring of 1998, SpanCom notified Compass that unauthorized checks had been drawn on its checking account. Apparently, SpanCom never notified SouthTrust of the situation.
SpanCom contends that the trial court erred in entering the summary judgment in favor of Compass and SouthTrust, because, it says, SouthTrust's willingness to cash unendorsed checks is evidence of negligence. We need not decide whether SpanCom presented substantial evidence of negligence, however, because §7-4-406(f), which is in the nature of a statute of repose, absolutely bars recovery from the banks in this case, regardless of negligence. *Page 933 
Section 7-4-406(f) reads as follows:
 "(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within 180 days after the statement and the items or a legible copy or image of the items are sent to the customer, or within one year after the statement or items are otherwise made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are sent or made available to the customer, discover and report any alteration on the back of the item or any unauthorized endorsement is precluded from asserting against the bank any such alteration or unauthorized endorsement. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under Section 7-4-208 with respect to the unauthorized signature or alteration to which the preclusion applies."
The "Alabama Comments" to § 7-4-406(f) state that the notice requirements set out in § 7-4-406(f) "are the periods within which the customer must notify the drawee bank of the fraud or be absolutely barred from recovery." It is undisputed that the last unauthorized check was cashed in December 1996. SpanCom did not provide notice of the possibility of fraud until more than one year later, in the spring of 1998. Therefore, pursuant to §7-4-406(f), SpanCom is absolutely barred from recovering damages, regardless of whether SouthTrust was negligent in cashing the checks and regardless of whether Compass was negligent in drawing money from SpanCom's account.
SpanCom argues that § 7-4-406(f) does not apply in this case because the checks at issue were unendorsed: they were not altered and did not bear "unauthorized" signatures; one of the factors, SpanCom says, is required by the statute. We find that argument to be disingenuous.
If under § 7-4-406(f) a bank customer has a duty to review his bank statements to discover and report altered or unauthorized signatures, it stands to reason that the customer has a duty to discover and report to the bank those situations in which no endorsement has been made at all. To hold that a customer is responsible for detecting altered checks or unauthorized signatures but is not required to notice that no endorsement has been made at all defies common sense. Although Alabama has not previously addressed this issue, other jurisdictions with statutes similar to § 7-4-406(f) have concluded that "unsigned and missing endorsements . . . are within the ambit of [U.C.C.] 4-406." Arkwright Mutual Ins. v. State Street Bank Trust, 428 Mass. 600, 703 N.E.2d 217, 220 (1998); see also, PamarEnterprises, Inc. v. Huntingdon Banks of Michigan, 228 Mich. App. 727,580 N.W.2d 11 (1998); Public Citizen, Inc. v. First NationalBank, 198 W. Va. 329, 480 S.E.2d 538 (1996); Great American Ins.Co. v. American State Bank, 385 N.W.2d 460 (N.D. 1986); and TrustCompany Bank v. Atlanta IBM Employees Federal Credit Union,245 Ga. 262, 264 S.E.2d 202 (1980).
SpanCom failed to notify the banks of the unauthorized checks within one year of receiving the statements involving the checks. The lax accounting and bookkeeping procedures that were in place at SpanCom at the time the unauthorized checks were being cashed are as much to blame for the situation as any possible negligence on the part of the banks.
SpanCom is statutorily barred from recovery in this case. Therefore, the trial court properly entered the summary judgment in favor of the banks. The judgment is affirmed.
AFFIRMED. *Page 934 
Robertson, P.J., and Yates, Crawley, and Thompson, JJ., concur.