291 N.J. Super. 577 (1996)
677 A.2d 1168
SPEVACK, CAMERON & BOYD, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
NATIONAL COMMUNITY BANK OF NEW JERSEY, NOW KNOWN AS THE BANK OF NEW YORK, NA, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT/THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
SAMUEL L. SALTER, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1996.
Decided June 28, 1996.
*578 Before Judges PETRELLA and BILDER.
*579 Frank E. Catalina argued the cause for appellant (Margulies, Wind, Herrington & Knopf, attorneys; Mr. Catalina, on the brief).
Gregg S. Sodini argued the cause for respondent (Cuyler Burk, attorneys; Mr. Sodini, on the brief).
The opinion of the court was delivered by BILDER, J.A.D. (Retired and Temporarily Assigned on Recall).
This is an action by the maker of a check against the drawee bank for payment of a check which the maker alleges did not bear the required endorsement of the payee. Plaintiffs Spevack, Cameron & Boyd, a law partnership, appeal from an order of the Law Division granting defendant Bank of New York a summary judgment dismissing their claim for wrongful payment out of PLAINTIFFS' TRUST ACCOUNT.
The relevant facts are essentially undisputed and can be simply stated. Plaintiffs represented a client, third-party defendant Samuel Salter, in connection with a loan he was obtaining, to be secured by a mortgage on property in Bernardsville. In advance of the closing, plaintiffs received the loan proceeds from the lender and deposited it in their trust account at the Bank of New York.[1] A title search disclosed the presence of an existing mortgage held by Homequity. Plaintiffs obtained a pay-off letter from Homequity and, at the time of closing, drew a check on its Bank of New York trust account in the sum of $972,681.66 made payable to Homequity.
The check was mailed to Homequity and thereafter deposited in the Homequity account at the Midlantic Bank. When deposited the check was endorsed "deposit only" followed by an account number which corresponded with the account number of Homequity at the Midlantic Bank.
*580 Unknown to any of the parties, Salter did not own the real estate which he purported to mortgage and the supposed Homequity mortgage was fictitious. The purported mortgagee, Homequity, was an alter ego of Salter, who used the $972,681.66 for his own purposes.
Plaintiffs settled with the defrauded mortgage lender and instituted this suit against its bank, defendant Bank of New York, alleging it breached a duty owed to plaintiffs by paying out on their check to Homequity. Plaintiffs posited the breach on two theories. One, that the check was not properly endorsed by Homequity since it contained only the words "deposit only" and an account number rather than a signature; and two, the proceeds of the check were diverted to uses other than those intended by the drawer.
In an oral opinion of October 13, 1995 the trial judge held that the fact that the money was actually credited to the account of the named payee, Homequity, is a valid defense to a claim of faulty or forged endorsement. See Stella v. Dean Witter Reynolds, 241 N.J. Super. 55, 68, 574 A.2d 468 (App.Div. 1990).
He also rejected plaintiffs' further contention that there is an exception to the general rule that a maker has no basis for complaint against the payor bank when the proceeds of the improperly endorsed instrument are credited to the named payee. In this latter case, they contend the bank remains liable if the proceeds of the check were used for a purpose other than that intended by the drawer. Finding no law to support this theory, the trial judge rejected it.
We agree with the trial judge on both scores and affirm substantially for the reasons given in his oral opinion. We add that common sense dictates that banks not be made liable to police the use of the proceeds of the millions of checks which pass through their hands. The bank's obligation is to insure that the check is valid and that it is properly paid to the named payee or its order.
*581 We also affirm because we are persuaded that the endorsement in the form used by the payee was proper and complete.
The "signature" used in an endorsement may take many forms. It need not be a signed name. "A signature is made by the use of any name * * * upon an instrument, or by any word or mark used in lieu of a written signature." N.J.S.A. 12A:3-401(2). In this computer age the use of numbers as a means of identification has become pervasive. Indeed, numbers are more readily recognized and handled than signatures. The "signature" used by Homequity was its account number at Midlantic, the bank in which it deposited the check. That "signature" accurately identified the payee and the funds were properly credited to the payee's account. In fact, had Homequity written a name without the account number, the bank would have had to look up the number that corresponded with the name. In keeping with the electronic age, it is the numbers which have the primary significance.
The purpose of the endorsement is to identify the user of the check, whether a depositor or a negotiator, so that the endorsement can be compared with the directions of the maker, that is to say, to ensure that the endorser is the same as the payee.[2] The use of the terms "deposit only" and the appending of the account number, clearly identified for the depositor's bank its post-endorsement limited purpose and the identity of the depositor  an identity which matched that of the payee named in the instrument. Subsequent institutions through whom the instrument moved had a right to rely on the first bank's signature guarantee.
For the purpose of endorsing a check for deposit, the unique account number assigned by a bank to a depositor is as complete a "signature" as the depositor's written or printed name.
Affirmed.
NOTES
[1] At the time of the transactions it was the National Community Bank. It was later taken over by the Bank of New York.
[2] Similarly, subsequent special or restrictive endorsements of a negotiated check must show that the subsequent endorser is the same as the person or entity to whom earlier endorsements were made. In such a case a number, having no meaning except to the endorser's own bank, would be meaningless.