950 A.2d 939 (2008)
401 N.J. Super. 345
DISTRIBUTOR LABEL PRODUCTS, INC. d/b/a Certified Data Products, Plaintiff-Appellant,
v.
FLEET NATIONAL BANK, as successor in interest to Summit Bank, Michael Alessandrini, Individually, and d/b/a Dynamic Data Solutions, Madelyn M. Alessandrini, Clifford Snow, Complete Personnel Services, Inc., Mintz Rosenfeld & Company, LLC, Michael Gould, C.P.A., Prudential Bank, Defendants, and
PNC Bank, Defendant-Respondent.
Mintz Rosenfeld & Company, LLC, and Michael Gould, Defendants/Third-Party Plaintiffs,
v.
Robert R. Ricciardi, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 2008.
Decided July 8, 2008.
*940 John J. Petriello, Newark, argued the cause for appellant (Levy, Ehrlich & Petriello, attorneys; Mr. Petriello, on the brief).
Gregg S. Sodini, Edison, argued the cause for respondent (Sodini & Spina, L.L.C., attorneys; Mr. Sodini, on the brief).
Before Judges COBURN, GRALL and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
Plaintiff Distributor Label Products appeals from the order of January 19, 2007, granting summary judgment in favor of defendant PNC Bank. Plaintiff seeks to hold PNC Bank liable for checks drawn on plaintiff's account with PNC Bank and thereafter fraudulently indorsed. Plaintiff's failure to exercise ordinary care, however, led to the fraudulent indorsements. This failure bars its claim against PNC Bank, unless PNC Bank also failed to exercise ordinary care. See N.J.S.A. 12A:3-406. Plaintiff has made no showing that PNC Bank failed to exercise ordinary care. Under these circumstances, plaintiff has no recovery against PNC Bank. We affirm.

I
Plaintiff was the victim of numerous embezzlement activities by its former bookkeeper, defendant Michael Alessandrini. At issue in this appeal is Alessandrini's embezzlement of a group of checks drawn on plaintiff's PNC Bank account and payable to Spinnaker Coating, Inc.
The fraud perpetrated by Alessandrini regarding the Spinnaker checks worked *941 this way. Alessandrini prepared checks payable to Spinnaker, which was a legitimate vendor of plaintiff. He fraudulently represented to Joseph Braun, plaintiff's president, that the checks were necessary to pay invoices. The checks were drawn on the bank account plaintiff had with PNC Bank and were signed by Braun. Alessandrini then deposited the checks into his account with Fleet Bank[1] which he held in the name of Dynamic Data Solutions. He forged the indorsement on some of these checks, and marked others "for deposit only" with his account number. The Spinnaker checks were dated between June 15, 1999, and October 30, 2000.
In its Fourth Amended Complaint, plaintiff alleged that PNC Bank had improperly debited plaintiff's account for the Spinnaker checks, and plaintiff asserted breach of contract and negligence claims against PNC Bank for doing so. After numerous motions for summary judgment and motions for reconsideration, the trial judge, on April 7, 2005, entered summary judgment in favor of plaintiff and against PNC Bank in the sum of $121,916.05, representing the amount of the Spinnaker checks negotiated after February 11, 2000, and the trial judge thereafter certified the judgment as final. That order was then appealed.
While the appeal was pending, the case went to trial against PNC and other parties regarding Alessandrini's embezzlement involving other checks. Plaintiff lost at trial.[2]
The Appellate Division then reversed and remanded the appeal involving the Spinnaker checks on the basis that the matter was improperly certified as final. On remand, PNC Bank once again moved for summary judgment, and that motion was granted by order dated January 19, 2007, accompanied by a written decision. That order is the subject of this appeal.

II
When reviewing a decision on a motion for summary judgment, this court employs the same standard applied by the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). In order for a motion for summary judgment to be granted, the movant must show "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995).
Generally, a bank may not charge its customer's account with a check which has a forged indorsement. See N.J.S.A. 12A:4-401, Uniform Commercial Code Comment 1; Guardian Life Ins. Co. of Am. v. Weisman, 223 F.3d 229, 232 (3d Cir.2000) (referencing Section 4-401 of the Uniform Commercial Code); see generally N.J.S.A. 12A:3-403(a) (providing that "an unauthorized signature is ineffective" in the absence of a specific exception). However, where the customer's lack of ordinary care substantially contributes to the loss, recovery may be precluded by operation of N.J.S.A. 12A:3-406, which provides that:

*942 a. A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
b. Under subsection a. of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
c. Under subsection a. of this section, the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection b. of this section, the burden of proving failure to exercise ordinary care is on the person precluded.
[N.J.S.A. 12A:3-406.]
This statute governs situations where a check contains an "alteration" or "forged signature." N.J.S.A. 12A:3-406(a). Some of the Spinnaker checks contained a forged signature of Spinnaker Coating in the indorsement, so the statute would apply to those checks. Other checks were indorsed "for deposit only" with Alessandrini's account number. A "for deposit only" designation with an account number is also considered a signature since it identifies the depositor of the check. Spevack, Cameron & Boyd v. Nat'l Comm. Bank of N.J., 291 N.J.Super. 577, 581, 677 A.2d 1168 (App. Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); see Mandelbaum v. P & D Printing Corp., 279 N.J.Super. 427, 432, 652 A.2d 1266 (App.Div.1995) ("Payment of a draft or check with a missing endorsement is the equivalent of payment of a forged instrument. . . ."). As a result, this statute, N.J.S.A. 12A:3-406, applies to all of the Spinnaker checks.
The statute will generally bar plaintiff's claim if plaintiff failed to exercise ordinary care with respect to the Spinnaker checks. N.J.S.A. 12A:3-406(a). However, if PNC Bank also failed to exercise ordinary care and that failure substantially contributed to the loss, then the loss will be allocated between plaintiff and PNC Bank. N.J.S.A. 12A:3-406(b). As a result then, to apply the statute to the facts of this case, two determinations must be made: first, whether plaintiff failed to exercise ordinary care which substantially contributed to a forged signature or alteration, N.J.S.A. 12A:3-406(a), and second, whether PNC Bank also failed to exercise ordinary care with respect to the Spinnaker checks, thereby substantially contributing to the loss. N.J.S.A. 12A:3-406(b).
Regarding the first determination, PNC Bank argues that plaintiff failed to exercise ordinary care in supervising Alessandrini. This argument relies on the jury's findings in the trial on Alessandrini's other embezzlement schemes. At that trial, the jury found that plaintiff knew about Alessandrini's fraudulent activity by April 15, 1998. Specifically, jury interrogatory number 25 read:
What date should Plaintiff Distributor Label Products, Inc. be charged with knowledge of the fraudulent activities of defendant Michael Alessandrini such that Plaintiff is precluded from recovering from defendants PNC Bank and Fleet Bank damages allegedly incurred as a result of further thefts by defendant Alessandrini after that date?
The jury's response was "April 15, 1998." All of the Spinnaker checks were issued after this date. Thus, plaintiff was *943 charged with knowledge of Alessandrini's fraudulent activity at the time the Spinnaker checks were signed by Braun. As a result, no rational factfinder could find that plaintiff exercised ordinary care by allowing Alessandrini to continue to process the Spinnaker checks without further investigation when it is deemed to have known that Alessandrini was engaged in fraudulent activities.
We now reach the second determination in the statutory analysis, that is, whether PNC Bank also failed to exercise ordinary care in its handling of the Spinnaker checks, thereby substantially contributing to the loss. If so, then an allocation of loss would have to be made between plaintiff and PNC Bank. N.J.S.A. 12A:3-406(b). Plaintiff has no expert who opines that PNC Bank failed to exercise ordinary care. Indeed, plaintiff's expert stated that PNC Bank had paid the Spinnaker checks properly, and he found no lack of ordinary care on the part of PNC Bank with respect to these checks. Further, PNC Bank, as the drawee bank, had no obligation to review Spinnaker's indorsements on the checks it received from Fleet, the depository bank. See Guardian Life Ins. Co. of Am. v. Weisman, supra, 223 F.3d at 235 ("[A]s a matter of law a drawee bank does not have a duty to conduct any review of payee indorsments on checks received from a depository bank.")[3] Accordingly, there is no factual basis in the record to hold that PNC Bank failed to exercise ordinary care.
Plaintiff seeks to overcome this obstacle by arguing that PNC Bank must nonetheless credit its account for the Spinnaker checks, and then PNC Bank may pursue remedies against Fleet Bank for negligence. Fleet Bank, as the depository bank, had the obligation to check the indorsements. See id. at 233. In making this argument, plaintiff relies on language in Guardian that indicates that where the drawee bank (PNC Bank) is not negligent, it must still credit its customer's account for the fraudulently endorsed check and then seek a remedy against the depository bank (Fleet Bank) for reimbursement. See id. at 237. However, this principle applies when the maker of the check (plaintiff) "is not itself negligent." Ibid. As noted above, the proofs show that plaintiff failed to exercise ordinary care. As a result, this principle provides no relief to plaintiff.
Since plaintiff failed to exercise ordinary care and that lack of ordinary care substantially contributed to the loss, its claim against PNC Bank is barred by N.J.S.A. 12A:3-406(a). Plaintiff is not entitled to an allocation of the loss to PNC Bank, since it cannot establish that PNC Bank failed to exercise ordinary care. See N.J.S.A. 12A:3-406(b). Accordingly, plaintiff's claim against PNC Bank fails, and summary judgment was properly granted.

III
We also note that those checks Alessandrini endorsed in the name of Spinnaker Coating (this excludes the checks indorsed "deposit only" with the account number) are also governed by N.J.S.A. 12A:3-405. That statute provides in pertinent part:
b. For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument *944 and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.
c. Under subsection b. of this section, an indorsement is made in the name of the person to whom an instrument is payable if it is made in a name substantially similar to the name of that person or the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.
Since Alessandrini was an employee of plaintiff entrusted with responsibility regarding the checks, his fraudulent indorsement of the checks in the name of Spinnaker is effective. See N.J.S.A. 12A:3-405(a) (defining "employee," "fraudulent indorsement," and "responsibility.") The statute would permit plaintiff to recover against the party who paid the instrument only if that party failed to exercise ordinary care when doing so and that failure substantially contributed to the loss. N.J.S.A. 12A:3-405(b). As noted above, plaintiff has presented no proof that PNC Bank failed to exercise ordinary care. Accordingly, this statute also bars plaintiff's recovery on those checks specifically indorsed in the name of Spinnaker.
Affirmed.
NOTES
[1] The checks were actually deposited into Alessandrini's Summit Bank account. However, Fleet Bank is the successor in interest to Summit Bank, so we will refer to the depository bank as Fleet Bank.
[2] A consent default judgment was entered against Alessandrini on October 30, 2006, for $769,631.51, which included principal and prejudgment interest.
[3] Although this case arose under Delaware law, due to the absence of Delaware case law interpreting Section 3-406, the court relied on the official comments of the Uniform Commercial Code and the law from other jurisdictions. See id. at 231-32.